[No. 5705–1–II.   Division Two.   July 5, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. DANIEL
V. TUFFREE, *Appellant.*

*Douglas Bitar,* for appellant.

*Michael G. Spencer, Prosecuting Attorney,* and *Gerald R. Fuller, Deputy,* for respondent.

PETRIE, J.—Daniel V. Tuffree appeals a judgment and sentence imposed following his conviction of indecent liberties, RCW 9A.44.100. On appeal he contends the trial court erred by (1) conducting the competency hearing in the presence of the jury; (2) precluding him from presenting "prior untruthful claims of sexual activities by the minor

child"; (3) finding the minor child competent to testify at trial and denying his motion to strike her testimony; (4) permitting the prosecution to use dolls for illustrative purposes to assist the minor child in her testimony; and (5) refusal to authorize expenditure of public funds for psychiatric analysis of defendant for possible use at the sentencing phase of the proceedings. We find no error and affirm the judgment and sentence.

A brief recitation of the facts will provide a better perspective from which to understand the issues on appeal. Shortly before or after Thanksgiving 1980, defendant was babysitting the prosecuting witness and her infant sister. In January 1981, the prosecuting witness, "Bertha" (not her real name) who was born March 24, 1976, reported to her aunt and, subsequently, to her mother an incident that caused the mother to believe defendant had sexually abused her child the previous November. The mother testified that she confronted defendant with the child's story, and he admitted to her that while he had been babysitting Bertha "he was in the bathroom beating off" when the child came into the room; that he asked Bertha to leave, but when she refused, "he let her watch."

Defendant was arrested and he told an investigating officer of the Aberdeen Police Department that while Bertha was taking a bath "he went into the bedroom and began playing with himself." Bertha came into the bedroom, asked him what he was doing, and he told her to leave. When Bertha failed to leave, they both went to the living room to watch the television. Defendant told the officer that he tried to explain to Bertha what he had been doing and why she should not be involved in that activity. The officer then testified that defendant made the following statements:

> [Bertha] then asked him if she could handle his genitals. He then agreed and took down his pants. At that time she took ahold of his genitals and bit him on the penis. She then ran into the other room.

The child testified that defendant put his "Ding dong

. . . [i]n my mouth." She also explained this and other "touching" incidents by pointing to areas on male and female dolls that the prosecution showed her to facilitate her testimony.

Before trial, defense counsel submitted a response to the State's omnibus request reciting in part that defendant's only witness would be Bertha's aunt who would testify that Bertha "has attempted to have sexual intercourse with the neighbor boy, . . ."; that Bertha and the aunt's three children talk frequently about sexual matters; that Bertha has taught one of the aunt's boys, age 4, how to "hump"; and that Bertha once said she wanted to "go all the way" with the same boy.

Faced with that response, the State moved in limine to prevent any defense evidence of alleged previous sexual misconduct of the prosecuting witness. When that motion came on for hearing, defense counsel explained to the court that, though Bertha had claimed to have sexual adventures with neighbor children, "from my understanding and my investigation it appears that many of these are unfounded"; and that the aunt, whom he had subpoenaed, "had given me the impression that in fact it was just talk and was not true." Further, defense counsel argued that he had to have some way to demonstrate to the court that Bertha "has a tendency to fabricate and tell untruths," in order to challenge her competency as a witness.

The trial judge ruled that such evidence was inadmissible to challenge Bertha's competency but that he would reserve judgment on the use of impeaching testimony depending upon the nature of any offer of proof presented at trial. (No offer was made at trial, and no evidence of the child's reputation for truthfulness was offered or presented to the jury.) The trial judge then announced that he would conduct the competency hearing in the presence of the jury by initially asking Bertha a few questions and counsel could then examine her more extensively; and that, at the conclusion of Bertha's testimony, if defendant still believed she was incompetent to testify, the court would entertain a

motion to strike her testimony. Counsel did so move, and the court denied the motion. Trial, conviction, and appeal followed.

We consider first defendant's challenge to the manner in which the trial court conducted the competency phase of the trial. After informally asking the child to identify herself, the court inquired whether she understood what it means to tell the truth and whether she promised to tell the truth. Receiving affirmative responses to those inquiries, the court formally swore the witness and permitted counsel to examine her further. The necessity of this latter formality, though questionable, is not an issue here. *State v. Collier*, 23 Wn.2d 678, 162 P.2d 267 (1945).

Defendant challenges the trial court's conduct of the proceedings in the presence of the jury and also the limitation placed upon defendant's right to present evidence of alleged incompetency. There is a paucity of precedent in Washington appellate opinions to assist attorneys and trial courts in the conduct of this sensitive aspect of trial practice. A most informative set of guidelines is presented by Justice (then Judge) Charles F. Stafford in *The Child as a Witness*, 37 Wash. L. Rev. 303 (1962). Regrettably, the trial court in the case at bench did not adhere more closely to several of the guidelines offered in that article. Nevertheless, we cannot conclude that defendant was so prejudiced by the conduct of the trial that he was denied a fair trial.

It is axiomatic, of course, that the determination of the competency of a child witness lies primarily with the trial court, and its determination will not be disturbed on appeal in the absence of proof of a manifest abuse of discretion. *State v. Ridley*, 61 Wn.2d 457, 378 P.2d 700 (1963), and authorities cited therein. The trial court's determination to conduct the proceedings in the presence of the jury is bothersome, but it was not erroneous as a matter of law. *See* Stafford, 37 Wash. L. Rev. at 312. At times, appellate courts have observed that it is more prudent, more orderly, or a better practice to conduct a child's voir dire examination as to competency out of the presence of the jury if for

no other reason than that such procedure obviates any risk that the jury may hear testimony which the court ultimately determines inadmissible. *State v. Panella,* 168 Conn. 532, 362 A.2d 953 (1975); *Greenville v. Willman,* 44 Ill. App. 2d 156, 194 N.E.2d 552 (1963); *Hildreth v. Key,* 341 S.W.2d 601 (Mo. Ct. App. 1960). *See also State v. Moorison,* 43 Wn.2d 23, 259 P.2d 1105 (1953); *United States v. Peele,* 574 F.2d 489 (9th Cir. 1978).

We note also that ER 104(a) provides in part that in making determinations as to the qualifications of a person to be a witness, the court is not bound by rules of evidence. Additionally, ER 104(c) provides that hearings on preliminary matters—presumably including determinations as to competency of witnesses—shall be conducted out of the hearing of the jury when the interests of justice require. ER 104(c) is the same as its federal counterpart, Fed. R. Evid. 104(c). The Advisory Committee on Proposed Rules has observed, as an interpretive guide to the federal rules, that

A great deal must be left to the discretion of the judge who will act as the interests of justice require.

Fed. R. Evid. 104(c) advisory committee note.

In the absence of any compelling precedent mandating a competency hearing be conducted in the absence of the jury, we are not inclined to declare erroneous the trial court's decision in the case at bench.

Defendant suggests in his brief—without, however, having raised the issue at trial—that the trial court's initial examination of Bertha allowed the jury to determine her credibility—a jury function exclusively—"partially upon unsworn testimony" and, additionally, "could be interpreted as a comment on unsworn evidence by the trial court." The trial court's examination of the child witness was cursory only, leaving to counsel the more detailed examination after the witness was formally sworn. The court may have committed a technical error, but we cannot find it clearly prejudicial. *Hodd v. Tacoma,* 45 Wash. 436, 88 P. 842 (1907); *but see State v. Collier, supra.*

We turn then to defendant's contention that he has been limited in his examination of the child and/or her aunt in order to determine whether the witness' recitation of the alleged incident was the result of fabrication or imagination. Bearing in mind that—at least in the absence of the jury—the trial court was not obligated to follow the usual rules of evidence, the court could have permitted the type of evidence defendant sought to elicit. Again, we refer to Stafford, 37 Wash. L. Rev. at 309 n.52, where the problem is specifically discussed.

At best, the prohibited testimony would have been available only to assist the court—not the jury—in determining competency. We note the trial court was keenly aware of the true test of the competency of a young child as a witness, as set forth by the five criteria enumerated in *State v. Allen,* 70 Wn.2d 690, 424 P.2d 1021 (1967). In denying defendant's motion to strike the child's testimony, the trial court observed:

> I, of course, was trying to observe the child and consider her testimony in the light of *State v. Allen.* She seemed to me to understand what she was being asked. She had some difficulty expressing herself. I think maybe it was more of a difficulty of speaking up. She nodded and shook her head at times rather than to speak out. She seemed to me to be quite nervous, and, of course, I have seen these characteristics in adults; the inability to speak out, nervousness, and fidgeting around in the chair.
>
> To the extent that she was asked questions and answered them, she seemed to understand the questions. She seems to have a memory of what occurred, and when she decided to say something, I thought she was able to express herself.
>
> Well, based on the test set out in *State v. Allen* I would have to conclude that she was a competent witness.

We hold that the trial court did not err by concluding that Bertha was competent to relate her version of the incident to the jury.

We consider only briefly defendant's contention that the prohibited testimony would have permitted him to chal-

lenge Bertha's credibility at trial. The trial court properly suggested to counsel that, for this purpose, he was misconceiving the theory as to admissibility of the excluded evidence. Defendant was really trying to establish Bertha's reputation for truth and veracity. No offer of proof was ever made that any potential witness was competent to testify as to that reputation. Defendant cannot now claim error. *State v. Crockett*, 161 Wash. 262, 296 P. 1041 (1931); *State v. Williams*, 18 Wn. App. 398, 569 P.2d 1190 (1977); ER 103(a)(2).

The prosecution's use of dolls was merely an aid to illustrate Bertha's testimony. Though she was permitted to point to specific areas of the dolls' anatomies to clarify her oral statements, she incisively and unmistakenly expressed herself verbally in her own language. We find no error.

■ Finally, defendant contends the trial court erred at the sentencing phase of the trial by denying the authorization of public funds to provide psychiatric analysis. He contends that CrR 3.1(f) mandates the expenditure of public funds when sought for that purpose by an indigent defendant in furtherance of his constitutional right to effective assistance of counsel. He does not expressly rely on CrR 7.1(a)(1), which requires the trial court, before imposition of sentence, to ask the defendant if he wishes to present "any information in mitigation of punishment". We note, of course, that the opinion of a professional psychiatrist was not sought in aid of defendant's defense to the crime charged. Defense counsel's affidavit in support of this motion recited merely that he

> believes that a psychiatric evaluation to determine whether the Defendant is dangerous and to determine his potential for repeating the illegal behavior will greatly assist the court in the sentencing of the Defendant; . . .

Defendant's constitutional right to effective assistance of counsel was not violated. *State v. Dickamore*, 22 Wn. App. 851, 592 P.2d 681 (1979). Neither does the record reveal that the trial court failed to comply with CrR 7.1(a)(1), by denying defendant's motion for expenditure of public

funds. We do not view CrR 7.1(a)(1) to mandate expenditure of public funds for the purpose sought herein, at least in the absence of any showing that such psychiatric evidence is necessary to contradict similar, adverse evidence presented by the State for sentencing purposes. Again, we find no error.

Judgment and sentence are affirmed.

PETRICH, C.J., and REED, J., concur.

Reconsideration denied July 27, 1983.

Review denied by Supreme Court October 7, 1983.