[No. 23511–7–I.   Division One.   January 14, 1991.]

THE STATE OF WASHINGTON, *Respondent,* v. DARRELL LEE
AAMOLD, *Appellant.*

*Joshua Weinstein* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Jeanette M. Dalton, Deputy,* for respondent.

WINSOR, J.*—Darrell Aamold appeals a judgment convicting him of second degree felony murder, vehicular homicide and fourth degree assault. We affirm.

---

*Judge Robert W. Winsor was a member of the Court of Appeals at the time oral argument was heard on this matter. He is now serving as a judge pro tempore of the court pursuant to CAR 21(c).

On August 6, 1988, the car Aamold was driving went off the road and smashed into a house, killing an infant sleeping in a crib. Evidence at trial revealed that Aamold was driving at excessive speed at the time of the crash in an attempt to elude a marked police car that was chasing him. According to a blood sample taken 1 hour after the collision, Aamold had a blood alcohol content of .19 percent.

Aamold was charged with second degree felony murder, vehicular homicide and fourth degree assault.[1] The felony murder charge was predicated on Aamold's attempt to elude the pursuing police vehicle, a felony under RCW 46.61.024. A jury found Aamold guilty on all three charges.

Aamold raises four issues on appeal. First, he contends that the trial court erred in denying his pretrial motion for appointment of an accident reconstruction expert. Under CrR 3.1(f), an indigent defendant is entitled to the assistance of an expert witness only if such services are necessary to an adequate defense. *State v. Barnes,* 58 Wn. App. 465, 472, 794 P.2d 52, *review granted,* 115 Wn.2d 1022 (1990). Whether the services of an expert are "necessary" within the meaning of this rule is committed to the sound discretion of the trial court, reversible only on a showing of substantial prejudice. *Barnes,* 58 Wn. App. at 472.

In the present case, Aamold requested appointment of an accident reconstruction expert. Aamold argued that the expert was necessary for establishing his defense that the brakes on the vehicle he was driving failed when he attempted to apply them, and that the collision would not have occurred had the brakes not failed. Aamold's argument must fail. Expert testimony to support Aamold's defense was available to him. At the hearing on Aamold's motion to appoint an expert, the prosecutor stated that a man by the name of Bob Briton, a private consultant, had examined the vehicle and had concluded that only one of

---

[1]The assault charge stemmed from Aamold's assault on his girl friend immediately prior to the collision and is not at issue in this appeal.

the four brakes was "legal" at the time of the collision. The prosecutor also stated that Mr. Briton had prepared a report on the accident and was available and willing to testify for the defense.

Although defense counsel made use of the information in Mr. Briton's report to cross–examine the State's accident reconstruction expert, defense counsel chose not to use Mr. Briton further. Defense counsel never explained to the trial court why Mr. Briton's services would be inadequate. Therefore, we cannot say that the trial court abused its discretion in denying Aamold's request for appointment of an accident reconstruction expert. *Cf. State v. Anderson,* 33 Wn. App. 517, 519, 655 P.2d 1196 (1982) (trial court's refusal to appoint expert not reversible error where defendant made no offer of proof regarding the necessity of additional expert testimony and the trial court found that additional evaluations and reports by experts would be cumulative).[2]

Aamold's second contention is that the trial court erred in denying his motion to dismiss the felony murder charge. He argues that a well established rule of statutory construction as well as the constitutional guaranty of equal protection prevent him from being lawfully charged with both vehicular homicide under RCW 46.61.520 and felony murder under RCW 9A.32.050(1)(b).

Aamold's statutory construction argument is based on the rule that if an act is punishable under both a

---

[2]The State presented substantial evidence from which the jury could have concluded that Aamold simply did not apply his brakes and that, had Aamold done so, the brakes would have been functional, albeit not legally adequate. The State's accident reconstruction expert, a King County police officer, testified at trial that Aamold's vehicle left no skidmarks, indicating to him that Aamold had not applied the brakes. The officer acknowledged that a total brake failure would also be consistent with the absence of skidmarks, but stated he did not believe, based on his examination of the car, that a total brake failure had occurred. Another officer testified that during the chase but prior to the accident Aamold had successfully applied the brakes several times, as evidenced by the illumination of the rear brake lights, the smoke rising from the tires, the fishtailing of the car and the decrease in the car's speed.

general statute and a special statute, a defendant may only be charged under the special statute. *See generally State v. Shriner,* 101 Wn.2d 576, 580, 681 P.2d 237 (1984). This rule is, however, inapposite because it applies only where the two statutes are concurrent, that is, where a violation of the special statute will always be a violation of the general statute. *Shriner,* at 580. Had the predicate felony for Aamold's felony murder charge been vehicular homicide, Aamold's argument would have merit. Here, however, the felony murder charge, the charge under the general statute, is predicated on the felony of attempting to elude a pursuing police vehicle under RCW 46.61.024. Because the crime of attempting to elude contains several additional elements not included in the crime of vehicular homicide,[3] the two statutes are not concurrent. Therefore, the rule of statutory construction cited by Aamold does not prevent Aamold from being charged with both vehicular homicide and felony murder predicated on his attempt to elude a police vehicle.

Aamold's second argument on this point, that charging him with felony murder violates his constitutional right to equal protection of the laws, must fail for the same reason. As Aamold correctly points out, equal protection is violated when two statutes declare the same acts to be crimes, but penalize more severely under one statute than the other. *State v. Leech,* 114 Wn.2d 700, 711, 790 P.2d 160 (1990). Where, however, as in this case, the two statutes under which a defendant is charged have different elements, there is no violation of equal protection. *Leech,* at 711–12. Thus, charging Aamold with both vehicular homicide and felony murder based on Aamold's attempt to elude a police vehicle did not deprive Aamold of equal protection.[4]

---

[3]For example, conviction for attempting to elude requires proof that the driver "wilfully fail[ed] or refuse[d] to immediately bring his vehicle to a stop . . . while attempting to elude a pursuing police vehicle". RCW 46.61.024.

[4]Aamold suggests that the felony murder statute is unconstitutional on its face because charging a defendant with felony murder based on a predicate felony

Aamold's third ground for appeal is that the trial court erred in refusing to give a *Sherman* instruction on the subjective mental state required for conviction under RCW 46.61.024 for attempting to elude a pursuing police vehicle. Conviction under that statute requires proof that the defendant drove a vehicle "in a manner indicating a wanton or wilful disregard for the lives or property of others". RCW 46.61.024. In *State v. Sherman,* 98 Wn.2d 53, 653 P.2d 612 (1982), the Washington Supreme Court interpreted this language as requiring that the defendant both objectively and subjectively acted with wanton and willful disregard of others, and directed trial courts to thereafter instruct juries that circumstantial evidence of a defendant's driving creates only a rebuttable inference that the defendant had "wanton and willful disregard." *Sherman,* at 58–59.

Although Aamold proposed an instruction based on *Sherman,* the trial court refused Aamold's request without explanation. We are troubled by the trial court's refusal in light of the Supreme Court's holdings in *Sherman* and *State v. Thomas,* 109 Wn.2d 222, 227–28, 743 P.2d 816 (1987) (defendant denied effective assistance of counsel where defendant alleged she was too intoxicated to form mental state of wanton and willful disregard required under RCW 46.61.024 and defense counsel failed to propose *Sherman* instruction).[5]

We do not find, however, that reversal of Aamold's conviction is required under the facts of this case.

---

of vehicular homicide would violate equal protection. In light of our holding that the statute is constitutional as applied to Aamold, any argument that it is unconstitutional on its face is also without merit. *See State v. Hood,* 24 Wn. App. 155, 158, 600 P.2d 636 (1979) (where statute alleged to be unconstitutional on its face, court looks to whether any conviction under the statute can be constitutionally upheld).

[5]Although the State argued that the wording of Aamold's proposed instruction was "tremendously confusing," the trial court did not indicate its grounds for refusal. That the wording of Aamold's proposed instruction may have been confusing, however, does not excuse the trial court's error in failing to give a proper *Sherman* instruction.

Although the trial court did not give a *Sherman* instruction, the trial court did instruct the jury that voluntary intoxication could be taken into consideration in determining whether a particular mental state actually existed. At closing, defense counsel argued from this instruction that Aamold's intoxication negated his ability to form the mental state required for conviction under RCW 46.61.024. The State argued in response that willful action was possible despite Aamold's intoxication. Thus, unlike *Thomas,* in which none of the instructions informed the jury of the relevance of voluntary intoxication to the mental intent of the crime charged, *Thomas,* 109 Wn.2d at 228, the jury in this case was instructed on the effect of voluntary intoxication. We do not condone the substitution of an instruction on voluntary intoxication for the instruction clearly required under *Sherman* and *Thomas.* Nonetheless, we hold that it is not within reasonable probability that the outcome of the trial would have been materially affected had the error not occurred. Therefore, the trial court's failure to give a *Sherman* instruction was harmless error. *See State v. Cunningham,* 93 Wn.2d 823, 831, 613 P.2d 1139 (1980) (nonconstitutional error is grounds for reversal only if, within reasonable probabilities, the outcome would have been materially affected had the error not occurred).

Aamold's last contention is that he was denied his constitutional right to counsel when the trial court received the jury verdict in defense counsel's absence. The evidence shows that defense counsel returned to his office after the trial with the understanding that the bailiff would call him if the jury reached a verdict before 5 p.m. Counsel entered a written stipulation that if a verdict was not reached by that time, the jury would be excused until 9 a.m. the following morning. At approximately 4:45 p.m., only 40 minutes after the jury began deliberating, the jury notified the bailiff that it had reached a verdict. The bailiff attempted to reach defense counsel by telephone approximately 25 times and eventually obtained operator assistance to try to

clear the line, all without success.[6] Unable to contact defense counsel, the bailiff sent a police officer to defense counsel's office. By that time, however, it was after 5 p.m. and defense counsel had left his office, assuming the jury had been excused for the evening. At 5:30 p.m., the trial court received the jury's verdict despite defense counsel's absence.

Aamold moved for a new trial on the ground that he was deprived of his constitutional right to counsel at a critical stage of the proceeding when the trial court received the jury verdict in defense counsel's absence. The trial court denied the motion, finding that defense counsel's absence had been voluntary and that Aamold had suffered no prejudice.

In *State v. Badda*, 68 Wn.2d 50, 62–64, 411 P.2d 411 (1966), the Washington Supreme Court appears to have held that a criminal defendant has no constitutional right to counsel when the jury verdict is received. In reaching this conclusion, the *Badda* court relied on the Ninth Circuit decision in *Newagon v. Swope*, 183 F.2d 340, 341 (9th Cir. 1950), *cert. denied*, 340 U.S. 921 (1951).[7] More recently, however, three federal circuits and several state courts have held that return of the verdict is a "critical stage" of a criminal trial and that a criminal defendant has a constitutional right to counsel at this time. *See United States v. Osterbrock*, 891 F.2d 1216, 1218 (6th Cir. 1989); *Siverson v. O'Leary*, 764 F.2d 1208, 1214 (7th Cir. 1985); *United States v. Calabro*, 467 F.2d 973, 988 (2d Cir. 1972), *cert. denied*, 410 U.S. 926 (1973); *Headen v. United States,* 373 A.2d 599, 600 (D.C. 1977); *People v. Pickett,* 2 Ill. App. 3d 560,

---

[6]According to the bailiff, the telephone system was acting in a "peculiar way": his calls were variously put on hold, transferred to a message center or transferred to counsel's private number, in which case the telephone would go dead.

[7]The court in *Badda* did not need to reach the constitutional issue because it found that defense counsel had been voluntarily absent when the verdict was received and that the defendant had indicated a willingness to proceed with the verdict without his counsel, thus waiving counsel's absence. *Badda,* 68 Wn.2d at 59, 63–64.

276 N.E.2d 751, 754 (1971), *aff'd on other grounds*, 54 Ill. 2d 280, 296 N.E.2d 856 (1973); *Spencer v. State*, 85 Wis. 2d 565, 271 N.W.2d 25, 28 (1978). We have little doubt that, in light of these more recent federal decisions, the Washington Supreme Court would today rule that receipt of the verdict is a "critical stage" of a criminal proceeding to which the constitutional right to counsel attaches. We need not decide this issue, however, because even if the trial court erred by receiving the jury verdict in defense counsel's absence, the error was harmless beyond a reasonable doubt. *See Osterbrock*, 891 F.2d at 1218 ("harmless beyond reasonable doubt" standard applies to review of Sixth Amendment violations resulting from counsel's absence during critical stage of trial).[8]

After deliberating for only 40 minutes, the jury returned a guilty verdict on all three charges. The court clerk polled the jury and the jury responded unanimously. The bailiff testified that there was no irregularity in the polling or the form of the verdict. At the hearing on Aamold's motion for a new trial, the trial court concluded that Aamold had not been prejudiced by his counsel's absence. Although the trial judge cannot represent the defendant and is no substitute for defense counsel, we are convinced beyond a reasonable doubt that Aamold was not prejudiced. *See, e.g., Siverson*, 764 F.2d at 1219–20 (defense counsel's absence during return of verdict harmless error beyond reasonable doubt even though jury returned split verdict and jury was not polled because nothing in record implied irregularity in verdicts that might have been uncovered by poll).[9] The

---

[8]Of course, if a defendant has no constitutional right to counsel at return of the verdict, the nonconstitutional standard for harmless error would apply. Because we conclude that the standard for harmless constitutional error has been satisfied, the less stringent standard for harmless nonconstitutional error would necessarily be satisfied as well.

[9]At Aamold's motion for a new trial, the trial court stated that defense counsel should have telephoned the court before leaving his office and that his failure to do so made his absence voluntary. Given the written stipulation that deliberations would cease at 5 p.m. if the jury had not reached a verdict and the bailiff's

trial court's error in receiving the verdict in defense counsel's absence was therefore harmless.

Aamold's conviction is affirmed.

PEKELIS and BAKER, JJ., concur.

testimony that the telephone system was acting "peculiar," the trial court's determination that defense counsel was "voluntarily" absent is highly questionable. Moreover, the focus should be on whether *Aamold* knowingly and voluntarily waived his right to counsel when the trial court received the verdict, not whether defense counsel was voluntarily absent. *See, e.g., Siverson,* 764 F.2d at 1213. Nothing in the record indicates that Aamold waived this right. This issue is moot, however, given our conclusion that the trial court's error in receiving the verdict in defense counsel's absence was harmless beyond a reasonable doubt.