[Nos. 29273-1-I; 29970-1-I.    Division One.    May 4, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. BRUCE
HERMANSON, *Petitioner.*

THE STATE OF WASHINGTON, *Respondent,* v. JOHN
HEATH, *Petitioner.*

*Jeff Ellis, Theresa Olson,* and *Peter Avenia* of *The Defender Association,* for petitioners.

*Norm Maleng, Prosecuting Attorney,* and *Regina Cahan, Deputy,* for respondent.

PER CURIAM. — Petitioners seek review of trial court orders denying their pretrial motions to appoint an expert to perform a sexual deviancy evaluation at public expense. A commissioner of this court denied Hermanson's motion for discretionary review and Hermanson has since moved to modify that ruling. Heath's motion for discretionary review has been referred to this panel for determination on the merits. In both cases the only issue presented is whether CrR 3.1(f) requires the State to appoint an expert to perform a sexual deviancy evaluation of an indigent defendant so the defendant may be able to take advantage of the special sex offender sentencing alternative (SSOSA). We grant Hermanson's motion to modify, accept review in both cases, consolidate the two appeals, and consider the merits on an accelerated basis pursuant to RAP 18.12.[1]

The merits of the two cases will be discussed separately.

### HERMANSON

The material facts in this case are succinctly set forth in the commissioner's ruling denying discretionary review:

---

[1]"The appellate court may set any review proceeding for accelerated disposition on the judges' motion calendar."

Hermanson is charged in King County Superior Court with three counts of rape of a child in the first degree. He is indigent and represented by a public defender. He has entered a plea of not guilty and trial in the matter is currently scheduled for December 4, 1991.

Hermanson has no prior felony convictions. His presumptive range, if convicted as charged, is 72 to 96 months. He would therefore be statutorily ineligible to receive a sentence pursuant to the Special Sex Offender Sentencing Alternative (SSOSA). RCW 9.94A.120(7). However, the State has indicated that it will amend the present charges in a manner to make Hermanson eligible for a SSOSA if he first receives a sexual deviancy evaluation and is found amenable to treatment. Hermanson wishes to take advantage of this offer but alleges he cannot afford the cost of an evaluation.

Hermanson therefore moved for a trial court order allowing such an evaluation at public expense. The cost of such an evaluation is approximately $450. The trial court refused the request, indicating that CrR 3.1(f) authorizes public expenditures for an adequate defense but not so that a defendant may take advantage of a plea bargain.

■■ Hermanson, an indigent defendant, argues that the trial court erred in refusing to authorize the expenditure of public funds for the sexual deviancy evaluation under CrR 3.1(f)(1), which provides:

Counsel for a defendant who is financially unable to obtain investigative, expert, or other services necessary to an adequate defense in the case may request them by a motion to the court.

"This rule incorporates constitutional requirements by recognizing that funds must be provided where *necessary* to an adequate defense." *State v. Kelly*, 102 Wn.2d 188, 200, 685 P.2d 564 (1984); *State v. Garcia*, 57 Wn. App. 927, 936, 791 P.2d 244, *review denied*, 115 Wn.2d 1010 (1990). The decision of whether an indigent defendant is entitled to the assistance of an expert lies within the sound discretion of the trial court. *State v. Garcia, supra*. As the court stated in *State v. Aamold*, 60 Wn. App. 175, 177, 803 P.2d 20, *review denied*, 117 Wn.2d 1016 (1991),

Under CrR 3.1(f), an indigent defendant is entitled to the assistance of an expert witness only if such services are necessary to an adequate defense. *State v. Barnes*, 58 Wn. App. 465, 472, 794 P.2d 52, *review granted*, 115 Wn.2d 1022 (1990)[, *affirmed*, 117 Wn.2d 701, 818 P.2d 1088 (1991)]. Whether the

services of an expert are "necessary" within the meaning of this rule is committed to the sound discretion of the trial court, reversible only on a showing of substantial prejudice.

The State asserts that the trial court's decision denying Hermanson's request for appointment of an expert to perform a sexual deviancy evaluation at public expense did not constitute an abuse of discretion. The State relies primarily on *State v. Melos*, 42 Wn. App. 638, 713 P.2d 138, *review denied*, 105 Wn.2d 1021 (1986).

In *Melos*, an indigent defendant assigned error to the trial court's refusal to authorize the expenditure of public funds for a psychiatric examination. Citing *State v. Tuffree*, 35 Wn. App. 243, 666 P.2d 912, *review denied*, 100 Wn.2d 1015 (1983), the *Melos* court held that the evaluation was not necessary to provide the defendant with an adequate defense under CrR 3.1(f) "since he had already pleaded guilty without a trial." *State v. Melos, supra* at 641.

In *Tuffree*, the trial court denied the defendant's request for the appointment of an expert at public expense to provide a psychiatric examination at his sentencing. The *Tuffree* court upheld the decision of the trial court, noting "that the opinion of a professional psychiatrist was not sought in aid of defendant's defense to the crime charged." *State v. Tuffree, supra* at 249.

█ Hermanson argues that the phrase "adequate defense" in CrR 3.1(f) should not "be read so narrowly as to deny indigent clients the right to plea bargain and take advantage of favorable plea offers where the indigent must first do some act that costs money." We agree. This case draws a clear distinction between the plea and sentencing phases of a criminal prosecution.

In this case the State, as part of the plea negotiations, has offered to restructure the charge against Hermanson so that he will be eligible for the special sex offender sentencing alternative (SSOSA) under RCW 9.94A.120(7). The SSOSA eligibility requirements mandate that the defendant have no prior convictions for a sex offense, RCW 9.94A-.120(7)(a)(i), that he or she be sentenced to a term of total confinement "of more than one year but less than six years,"

RCW 9.94A.120(7)(c), and not be presently charged with a violation of RCW 9A.44.050 (second degree rape) or a serious, violent, sex offense, RCW 9.94A.120(7)(a)(i).

It is undisputed that Hermanson is not currently eligible for SSOSA. Although he is a first-time sex offender, Hermanson, as presently charged, has a presumptive sentence range of 72 to 96 months. The low end of that sentence range still exceeds the maximum sentence level permitted under SSOSA. In order to meet the eligibility requirements of the statute, the State would have to either drop one of the three charges currently pending against Hermanson or charge him with a lesser offense. By agreeing to restructure the charge against Hermanson, the State has offered him a real incentive to obtain a sexual deviancy evaluation. It is undisputed that the State's offer is contingent upon the defendant's first receiving a sexual deviancy evaluation and being found amenable to treatment. The offer creates a tangible link between the evaluation and matters taking place at the plea negotiations. The request for a sexual deviancy evaluation is therefore not tied solely to matters of sentencing.

The law recognizes exculpatory as well as nonexculpatory defenses. Plea bargained immunity is a nonexculpatory defense and is discussed by one commentator as follows:

> Plea bargained immunity arises after the consummation of a plea agreement under which the state either drops pending charges or promises to forego prosecution of an offense not yet charged, in return for a plea of guilty to a lesser or remaining offense. Almost ninety-five percent of all criminal cases are concluded by the entry of a plea of guilty, and a large portion of these pleas are the result of plea negotiations. In spite of their widespread use, plea negotiations were at one time secretive and informal, and neither party was effectively bound by the agreement. Today such agreements, although often criticized, are a formalized part of the criminal justice system; if a valid plea agreement is consummated, it binds all parties, and where the agreement involves a promise to forego prosecution, it provides the defendant with an enforceable immunity from such prosecutions.

(Footnotes omitted.) 2 P. Robinson, *Criminal Law Defenses* § 206, at 489 (1984). Since the State's plea offer in this case

would actually reduce Hermanson's liability for his criminal conduct, the availability of the evaluation may be a significant aid in preparing Hermanson's "defense" to the offenses charged. Under the circumstances, the trial court abused its discretion in denying Hermanson's request for appointment of an expert to perform the sexual deviancy evaluation under CrR 3.1(f).

Hermanson's motion to modify is granted, and the decision of the trial court is reversed.

## HEATH

Heath has been charged with one count of child molestation in the third degree and two counts of rape of a child in the third degree. The charges arose from incidents which occurred during the spring of 1991, in which Heath allegedly had repeated sexual intercourse with the 14-year-old babysitter of his children. Heath sought a sexual deviancy evaluation by a trained therapist at public expense. By notation ruling dated December 19, 1991, the trial court denied the motion, holding:

> The defendant's request for a sexual deviancy evaluation for the possible use thereof at the time of sentencing is denied. CrR 3.1(f) authorizes the Court to expend funds when it is requested for "an adequate defense" not for sentencing. *St. v. Aamold,* 60 Wn. App. 175.
> RCW 9.94A.120(f) [*sic*] authorizes an examination after conviction.

■ Heath contends that the trial court erred in denying his motion for an order allowing a sexual deviancy evaluation by a trained therapist at public expense. Heath's situation is, however, significantly different from Hermanson's. The State here did not agree to reduce the charges pending against Heath. Instead, the State simply agreed to recommend that Heath be sentenced under SSOSA. Because Heath is already eligible for SSOSA, he is seeking the sexual deviancy evaluation solely for sentencing purposes. The evaluation cannot possibly diminish the scope of Heath's criminal liability. Heath's counsel states in an affidavit that the evaluation would be of assistance in representing the

defendant by ascertaining "the defendant's amenability to community based counseling." Under the circumstances, it should make no difference whether the request for the evaluation occurred before or after Heath was convicted of the charged offenses. Based on the reasoning in *Melos* and *Tuffree*, we cannot say that the trial court abused its discretion in refusing to authorize the sexual deviancy evaluation at public expense. The decision of the trial court is affirmed.

In sum, we reverse the denial of Hermanson's pretrial motion for an order appointing an expert to perform a sexual deviancy evaluation at public expense, and affirm the denial of Heath's like motion.

Review denied at 120 Wn.2d 1016 (1992).

[No. 26898-8-I.   Division One.   May 4, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN LOUIS WILLIAMS, *Appellant.*

*Andrew P. Stanton* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *David Merrell, Deputy,* for respondent.

KENNEDY, J. — Appellant John Williams appeals his convictions of second degree possession of stolen property and of being a felon in possession of a firearm. We affirm in part and reverse and remand in part, for resentencing with respect to the imposition of court costs and attorney fees.

## I
## A
### Procedural Facts

The State filed an information charging appellant John Williams with second degree possession of stolen property, RCW 9A.56.160(1)(e) and .140(1) and with being a felon in possession of a firearm, RCW 9.41.040.

A jury trial, before Judge Bridge, began on July 10, 1990. At the close of trial, the jury returned verdicts finding Williams guilty as charged.

Sentencing took place before Judge Bridge on August 17, 1990. The court sentenced Williams within the standard range and ordered Williams to pay $525 in recoupment of attorney fees, $335.10 in court costs, and a victim penalty assessment (VPA) of $100.

## B
## Substantive Facts

In April 1990, James Burlingame was a bartender at the Turf Restaurant near Pike Place Market. In early April, Burlingame stated to several patrons that he was interested in buying a gun. Burlingame testified that on April 3, Williams told Burlingame that he had two guns, a .38 caliber and another gun, for sale. Williams said he would sell Burlingame the .38 caliber for $100. When Burlingame said he was interested, Williams left the bar and returned with a paper sack containing two guns. Burlingame examined the .38 caliber and asked Williams if it was "hot". Williams stated that the gun was "clean". Burlingame gave Williams $50 and agreed to give him $50 more the next evening.

Later that evening, Burlingame asked Officer Goff to run a check on the gun. A check on the serial number revealed that the gun had been stolen two nights previously from a home in Bellevue.

When he learned the gun was stolen, Burlingame called the Bellevue police and made arrangements with them for the arrest of Williams when he returned to collect the remaining $50. When Williams returned on April 4, Officer Goff arrested him and held him until the Bellevue police arrived.

## II
## A
## Ability of Williams To Pay Monetary Obligations

Williams argues that the trial court erred in ordering him to pay $525 in recoupment of attorney fees, $335.10 in court costs, and a $100 victim penalty assessment as part of his sentence without determining whether he had a present or future ability to pay.

Former RCW 10.01.160[1] authorizes a sentencing court to impose costs and attorney fees on a defendant if the

---

[1]Former RCW 10.01.160 provides in full:

"**10.01.160 Costs — What constitutes — Payment by convicted defendant — Procedure — Remission.** (1) The court may require a convicted defendant to pay costs.

"(2) Costs shall be limited to expenses specially incurred by the state in prosecuting the defendant. They cannot include expenses inherent in providing a constitutionally guaranteed jury trial or expenditures in connection with the

defendant is able to pay or will be able to pay. A sentencing court's determination of a defendant's resources and ability to pay is factual and is reviewed under the clearly erroneous standard. *State v. Baldwin*, 63 Wn. App. 303, 312, 818 P.2d 1116 (1991). The decision to impose recoupment of attorney fees is reviewed for an abuse of discretion as it is a decision requiring "the trial court to balance the defendant's ability to pay against the burden of his obligation." *Baldwin*, 63 Wn. App. at 312.

In *Baldwin*, this court held that "formal findings of fact are not required for imposition of recoupment of attorney fees at sentencing." (Footnote omitted.) 63 Wn. App. at 311. However, RCW 10.01.160(3) provides that at sentencing, "the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose." Although formal findings are not required, RCW 10.01.160(3), which mandates that the sentencing·court must be apprised of a defendant's financial situation, must be followed.

Here the report of proceedings at sentencing reflects that the sentencing court made no inquiry into the financial resources of Williams.[2] Compare *Baldwin*, 63 Wn. App. at

---

maintenance and operation of government agencies that must be made by the public irrespective of specific violations of law. Expenses incurred for serving of warrants for failure to appear and jury fees under RCW 10.46.190 may be included in costs the court may require a convicted defendant to pay.

"(3) The court shall not sentence a defendant to pay costs unless the defendant is or will be able to pay them. *In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.*

"(4) A defendant who has been sentenced to pay costs and who is not in contumacious default in the payment thereof may at any time petition the court which sentenced him for remission of the payment of costs or of any unpaid portion thereof. If it appears to the satisfaction of the court that payment of the amount due will impose manifest hardship on the defendant or his immediate family, the court may remit all or part of the amount due in costs, or modify the method of payment under RCW 10.01.170." (Italics ours.)

[2]Not only did the sentencing judge make no inquiry into Williams' financial resources, but immediately after sentencing, and with respect to the question of an in forma pauperis appeal, the following colloquy took place:

"THE COURT: . . . Is Mr. Williams employed?

"MR. POWELL: No, Your Honor.

311 (noting that the sentencing court took into account a presentence report describing defendant as employable). Nor does the record on appeal contain any presentence report or other information from which a sentencing judge could follow RCW 10.01.160(3). Thus, we reverse and remand for resentencing on the issue of attorney fees.

With regard to the imposition of court costs, this court in *State v. Curry*, 62 Wn. App. 676, 680-81, 683, 814 P.2d 1252 (1991),[3] held that the failure of a sentencing court to enter findings is not a constitutional error requiring resentencing if the sentencing judge was apprised of the defendant's financial situation. *See also* RCW 10.01.160(3). In *Curry*, the record reflected that the sentencing court was aware of the defendants' financial situation before it imposed costs. 62 Wn. App. at 683. Here, unlike *Curry*, nothing in the record indicates that the sentencing judge had any knowledge of Williams' financial situation. Thus, we reverse and remand for resentencing on the issue of court costs.

■ RCW 7.68.035(1) requires the sentencing court to impose a contribution to the victim assessment fund.[4] The imposition of a VPA pursuant to RCW 7.68.035 is mandatory and requires no consideration of a defendant's ability to pay. In *Curry*, this court held that a defendant's ability to

---

"THE COURT: How long has it been since you have been employed?
"MR. WILLIAMS: About 15 years.
"THE COURT: Own a house?
"MR. WILLIAMS: No.
"THE COURT: A car?
"MR. WILLIAMS: No.
"THE COURT: Any major assets? Any property, other property?
"MR. WILLIAMS: No.
"THE COURT: I'll sign the order of indigency."

[3]The Supreme Court granted discretionary review of *Curry* by order dated February 6, 1992. [Reporter's Note: The Supreme Court affirmed the decision of the Court of Appeals at 118 Wn.2d 911 (1992).]

[4]RCW 7.68.035(1) provides in pertinent part: "[T]here shall be imposed by the court upon such convicted person a penalty assessment. The assessment shall be in addition to any other penalty or fine imposed by law and shall be one hundred dollars for each case".

pay "is irrelevant to the imposition of the VPA at sentencing."[5] 62 Wn. App. at 683; *see also State v. Suttle*, 61 Wn. App. 703, 714, 812 P.2d 119 (1991) (upholding a $100 VPA on the basis that it did not infringe on the right to counsel and that it was minimal); *State v. Eisenman*, 62 Wn. App. 640, 646, 810 P.2d 55, 817 P.2d 867 (1991) (noting that "[i]t is not even clear that the $100 victim assessment should be considered a 'cost', because it is imposed under a separate statute that is not concerned with recoupment of costs incurred by the State, RCW 7.68.035, and does not appear discretionary.") (Footnote omitted.) On the basis of *Curry*, we uphold the sentencing court's imposition of a $100 VPA.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

PEKELIS and BAKER, JJ., concur.

[No. 29110-6-I.  Division One.  May 4, 1992.]

THE ERECTION COMPANY, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant*.

---

[5]The court determined that such holding does not violate constitutional principles as RCW 9.94A.200 and RCW 7.21.010 protect a defendant if his violation is not willful. *Curry*, 62 Wn. App. at 682.

*Kenneth O. Eikenberry, Attorney General,* and *Elliott S. Furst, Assistant,* for appellant.

*Mark F. O'Donnell* and *Oles, Morrison & Rinker,* for respondent.

PEKELIS, J. — The Department of Labor and Industries (Department) appeals a trial court order setting aside a decision of the Board of Industrial Insurance Appeals (Board). The Board had dismissed The Erection Company, Inc.'s appeal of a citation and proposed penalty for alleged violations of the Washington Industrial Safety and Health Act of 1973 (WISHA), RCW 49.17 *et seq.,* concluding that the Company's notice of appeal was untimely. We affirm.

I

On April 6, 1988, the Department cited The Erection Company for five on-site safety violations and proposed a $14,420 penalty. On April 14, the Company notified the

Department by letter that it would appeal the citation and penalty. On April 25, the Department sent written notice to the Company that it had reassumed jurisdiction and scheduled an informal conference for May 10. This conference was never held. The Department then issued three more reassumption notices on May 10, June 1, and June 17. In each case, however, the scheduled conferences were canceled.

Rather than continue rescheduling the informal conference, the Department issued a corrective notice of redetermination on July 7 affirming the citation and proposed penalty. The corrective notice provided that any further appeal "must be made to the Board . . . within fifteen working days of the communication of this notice or it shall be deemed a final order and not subject to review by any court or agency."

The Erection Company received the corrective notice of redetermination on July 11. Approximately 16 working days later, on August 2, the Company sent a notice of appeal to the Director.

On August 7, 1989, an administrative law judge issued a proposed decision and order dismissing The Erection Company's appeal because the Company failed to timely appeal from the corrective notice of redetermination. The Board accepted review of the matter and affirmed the dismissal. The Company appealed the Board's decision in Superior Court. Concluding that the Company's initial April 14 notice was sufficient to preserve its right of appeal, the trial court set aside the dismissal order and remanded the case before the Board. The Department appeals from the trial court's order.

## II

Under WISHA, an employer has 15 working days from receipt of a citation or proposed penalty assessment to notify the Director of the Department that the employer intends to appeal. RCW 49.17.140(1).[1] If a notice of appeal is not filed

---

[1] RCW 49.17.140(1) provides:

"If after an inspection or investigation the director or his authorized representative issues a citation under the authority of RCW 49.17.120 or 49.17.130, the department, within a reasonable time after the termination of such inspection or investigation, shall notify the employer by certified mail of the penalty to be

within that time, the citation and assessment "shall be deemed a final order of the department and not subject to review by any court or agency." RCW 49.17.140(1).

When, however, a timely notice of appeal has been filed, the Director may either forward the matter directly to the Board or reassume jurisdiction and issue a corrective notice of redetermination within 30 working days. RCW 49.17-.140(3).[2] If the Director elects to pursue the latter option and reassumes jurisdiction, the employer must be afforded notice and an opportunity to be heard either in writing or orally "at an informal conference to be held prior to the expiration of the thirty-day period." RCW 49.17.140(3); *see also* WAC 296-350-050. The decision of the Director "shall then become final

---

assessed under the authority of *RCW 49.17.180 and shall state that the employer has fifteen working days* within which to notify the director that he wishes to appeal the citation or assessment of penalty. If, within fifteen working days from the communication of the notice issued by the director the employer fails to notify the director that he intends to appeal the citation or assessment penalty, and no notice is filed by any employee or representative of employees under subsection (3) of this section within such time, the citation and the assessment shall be deemed a final order of the department and not subject to review by any court or agency." (Italics ours.)