[No. 61195-5.    En Banc.    January 19, 1995.]

THE STATE OF WASHINGTON, *Petitioner*, v. JOHN CLINTON YOUNG, *Respondent*.

*Russell D. Hauge, Prosecuting Attorney,* and *Pamela B. Loginsky* and *Ione S. George, Deputies,* for petitioner.

*Jeffrey J. Jahns* and *Ronald D. Ness & Assoc.,* for respondent.

MADSEN, J. — Respondent John C. Young (Young) pleaded guilty to second degree child molestation in Kitsap County Superior Court and, thereafter, moved for an order granting the use of public funds for a psychosexual evaluation to deter-

mine his eligibility for the special sexual offender sentencing alternative (SSOSA) option. The trial court granted Young's motion. Petitioner, State of Washington (State), seeks review of the trial court's order. At issue is whether the trial court has the authority to order the expenditure of public funds for a psychosexual evaluation to be used at sentencing.

## FACTS

Young was charged by information filed on October 11, 1993, with one count of child molestation in the second degree.[1] On October 25, 1993, the trial court found Young to be indigent and appointed counsel at public expense. On November 30, 1993, Young pleaded guilty as charged pursuant to a plea agreement with the State. The plea agreement contained the following provision:

> The State will consider recommending the Special Sex Offender Sentencing Alternative (RCW 9.94A.120(7)(a)) after reviewing an evaluation of the defendant, with all applicable conditions if defendant is found amenable to treatment by an evaluator acceptable by the State. Examination shall include polygraph and plethysmograph testing and a proposed treatment plan. The State does not agree, hereby, to the disbursement of public funds for payment of this evaluation.

Clerk's Papers, at 11.

At the time of entering his plea, Young acknowledged he understood the State was not agreeing to disbursement of funds for a psychosexual evaluation. Nevertheless, he moved the trial court to approve the use of public funds for an evaluation. The State opposed the motion and on December 28, 1993, a hearing was held with both parties submitting memoranda of law and making oral arguments.

The trial court granted Young's motion, concluding that it had the "authority and the obligation, pursuant to RCW 9.94A.120, CrR 3.1(f) and the Constitutions of the United States and the State of Washington, to order the use of public funds for an evaluation to determine whether an indi-

---

[1]The trial court's Findings of Fact/Conclusions of Law states that Young was charged with one count of child molestation in the *first* degree. In fact, the information indicates he was charged with one count of child molestation in the *second* degree.

gent defendant is amenable to treatment and qualifies for the SSOSA option". Clerk's Papers, at 44. Moreover, the trial court concluded that if it were to deny Young's motion, his right to due process and equal protection would be violated.

The trial court stayed disbursal of public funds and sentencing was continued pending the State's appeal. The State petitioned this court for direct review of the trial court's order. Petition for review was granted on March 17, 1994, pursuant to RAP 2.3(b)(2), 4.2(a)(3), and 4.2(a)(4).

## ANALYSIS

In Washington, CrR 3.1 sets forth the right of an indigent defendant to the assistance of counsel and authorizes payment for expert services when necessary to an adequate defense. CrR 3.1(a), (d), (f); *see also State v. Mines*, 35 Wn. App. 932, 935, 671 P.2d 273 (1983), *review denied*, 101 Wn.2d 1010 (1984). The rule provides, in part, that:

> (1) Counsel for a defendant who is financially unable to obtain investigative, expert, or other services necessary to an adequate defense in the case may request them by a motion to the court.
>
> (2) Upon finding the services are necessary and that the defendant is financially unable to obtain them, the court . . . shall authorize counsel to obtain the services on behalf of the defendant.

CrR 3.1(f). Whether expert services are necessary for an indigent defendant's adequate defense lies within the sound discretion of the trial court and shall not be overturned absent a clear showing of substantial prejudice. *Mines*, at 935.

The trial judge, here, found that the requested SSOSA evaluation was necessary both to aid her in determining Young's amenability to treatment and to allow Young to rebut an adverse inference regarding his amenability to treatment. The State does not contend that the judge abused her discretion in so finding. Rather, the State asserts, as a matter of law, that CrR 3.1(f) does not authorize the expenditure of public funds for this purpose. See Br. of Pet'r, at 8. In support of its position, the State cites *State v. Hermanson*, 65 Wn. App. 450, 829 P.2d 193, *review denied*, 120 Wn.2d

1016 (1992); *State v. Melos*, 42 Wn. App. 638, 713 P.2d 138, *review denied*, 105 Wn.2d 1021 (1986); and *State v. Tuffree*, 35 Wn. App. 243, 666 P.2d 912, *review denied*, 100 Wn.2d 1015 (1983).

The general rule, stated in *Melos*, is that CrR 3.1(f) does not mandate appointment of an expert at public expense unless such services are necessary to an adequate defense. *Melos*, at 640. The defendant in that pre-SRA (Sentencing Reform Act of 1981) case requested the expenditure of funds to obtain a psychological evaluation for use at sentencing. His request was denied and he appealed, arguing that the expenditure was mandated by CrR 3.1(f). The Court of Appeals disagreed and found that the trial court had not abused its discretion in denying the request. Because the defendant had pleaded guilty, the Court of Appeals found that the trial court reasonably concluded that the evaluation was not necessary to an adequate defense. *Melos*, at 641. The *Melos* court also found the evaluation was not necessary to rebut similar, adverse evidence presented by the State and thus not mandated under the exception noted in *Tuffree*. *Melos*, at 641.

In *Tuffree*, the Court of Appeals affirmed a trial court denial of the expenditure of public funds for a psychiatric evaluation to be used at sentencing. *Tuffree*, at 250. Because the defendant did not need the evaluation to rebut similar, adverse evidence presented by the State at sentencing, the court concluded that the expenditure was not mandatory and, therefore, the trial court had not abused its discretion in denying the request. *Tuffree*, at 249-50.

Most recently, in *Hermanson*, the Court of Appeals considered the arguments of two defendants who asserted that CrR 3.1(f) mandated the expenditure of public funds for sexual deviancy evaluations. *Hermanson*, at 451. Defendant Hermanson was offered an opportunity for a reduction of charges, either in number or degree, if he obtained a favorable evaluation. The other defendant, Heath, sought the evaluation solely for use at sentencing. In resolving these cases, the court made

it clear that CrR 3.1(f) does not mandate the expenditure of public funds for a sexual deviancy evaluation at public expense unless the evaluation will affect criminal liability or is necessary to rebut similar, adverse evidence presented by the State at sentencing. *Hermanson*, at 453. The court thus concluded that the denial of the expenditure for Hermanson amounted to an abuse of discretion since the evaluation was linked to the issue of liability. *Hermanson*, at 455. Conversely, the court found no abuse of discretion in the denial of Heath's requested appointment since the evaluation was solely for the purpose of sentencing. *Hermanson*, at 455.

Contrary to the State's position, the holdings in *Melos, Tuffree,* and *Hermanson* do not deprive the trial court of authority to expend funds for psychological evaluations to be used at sentencing. The trial court's authority to approve the expenditure of public funds under CrR 3.1(f) was not argued nor decided in those cases. Rather, the conclusion reached by those courts is that CrR 3.1(f) does not mandate the expenditure of public funds for such evaluations when used solely for sentencing purposes. These decisions are in line, therefore, with the general rule that a trial court determination that expert testimony is necessary to an adequate defense will be upheld absent an abuse of discretion.

As an additional basis of authority for ordering the expenditure in this case, the trial court relied on RCW 9.94A.120(7) to order an evaluation at public expense. Through that statute the Washington Legislature has authorized trial court discretion to order psychosexual evaluations to determine a defendant's eligibility for SSOSA — a special sentencing option for qualifying defendants. The Legislature developed the special sentencing provision for first-time sex offenders in an attempt to prevent future crimes and protect society. *See* David Boerner, *Sentencing in Washington* § 8.1, at 8-1 to 8-2 (1985). The statute provides in pertinent part that:

> When an offender is convicted of a sex offense other than a violation of RCW 9A.44.050 or a sex offense that is also a

serious violent offense and has no prior convictions for a sex offense or any other felony sex offenses in this or any other state, the sentencing court, on its own motion or the motion of the state or the defendant, may order an examination to determine whether the defendant is amenable to treatment.

. . . .

The court on its own motion may order, or on a motion by the state shall order, a second examination regarding the offender's amenability to treatment. The evaluator shall be selected by the party making the motion. The defendant shall pay the cost of any second examination ordered unless the court finds the defendant to be indigent in which case the state shall pay the cost.

RCW 9.94A.120(7)(a)(i).

The State points out that the statute is silent regarding payment for the initial SSOSA evaluation. In contrast, the Legislature has authorized the expenditure of public funds for second SSOSA evaluations. Br. of Pet'r, at 16-18. The State contends that this difference in the language demonstrates that the Legislature has authorized the expenditure of public funds only for the subsequent evaluation. We disagree with this construction.

When interpreting a statute, this court has stated that the primary objective is to carry out the intent of the Legislature. *Anderson v. O'Brien*, 84 Wn.2d 64, 67, 524 P.2d 390 (1974). To determine the intent, we must look first to the language of the statute itself. *State v. Reding*, 119 Wn.2d 685, 690, 835 P.2d 1019 (1992); *Driscoll v. Bremerton*, 48 Wn.2d 95, 99, 291 P.2d 642 (1955). Contrary to the State's position, the SSOSA statute does not authorize the expenditure of public funds for either the initial or the second evaluation. Rather, the statute directs that payment shall be made by the "State" in the second instance. In a criminal prosecution the State is, of course, the prosecutor.

This assignment of payment responsibility to the State makes sense considering the language and purpose of the second SSOSA evaluation provision. In 1990, the Legislature amended RCW 9.94A.120(7) to authorize a second evaluation as a mechanism for challenging a defendant's first evaluation. Laws of 1990, ch. 3, § 705, p. 81. The amendment

was related to a concern expressed by the Governor's Task Force on Community Protection, chaired by King County Prosecutor Norm Maleng, that sex offender treatment professionals were not licensed or certified and that the resulting recommendations for treatment might be made by inexperienced or untrained evaluators. Wash. State Governor's Task Force on Comm'ty Protec., *Final Report* IV-25 (Nov. 28, 1989). It was concluded that a second evaluation may be necessary to properly determine amenability to treatment. The amendment provides for a subsequent evaluation on the motion of the State or on the court's motion, and provides further that the moving party shall select the evaluator. RCW 9.94A.120(7)(a)(i). Since the request for a second evaluation cannot be made by the defendant, however, payment cannot be authorized pursuant to CrR 3.1(f). Thus, it makes sense that the Legislature included language specifying payment responsibility for the second evaluation.

While the second evaluation is optional, an initial SSOSA evaluation is required to establish eligibility for the alternative sentencing option. Although the Legislature recognized research suggesting that early intervention may help a sex offender control his impulses, it was also aware that "curing" a sex offender is highly unlikely. Wash. State Governor's Task Force on Comm'ty Protec., *Final Report* IV-23 (Nov. 28, 1989). On this basis, the Legislature limited the SSOSA option to those defendants found to be amenable to treatment through an initial evaluation.

RCW 9.94A.120(7)(a)(i) provides the trial court with the authority to order an initial evaluation to determine whether the offender is amenable to treatment. Once ordered, there must be some correlation between the judge's ability to order the evaluation and the order being executed. It is reasonable, therefore, to conclude that the Legislature intended to confer upon trial courts not only the discretion to order the necessary evaluation but to order the expenditure of public funds when the initial evaluation is ordered for an indigent defendant. To conclude otherwise would result in effectively removing the discretion from the sentencing judge to impose

the SSOSA option on all qualifying first-time sex offenders and, thereby, defeat the purpose of the statute. We will not interpret a statute "so as to render any portion meaningless, superfluous or questionable". *Addleman v. Board of Prison Terms & Paroles*, 107 Wn.2d 503, 509, 730 P.2d 1327 (1986).

Before imposing the SSOSA option, the Legislature has also required that the sentencing judge determine "whether the offender and the community will benefit from use of this special sexual offender sentencing alternative . . .." RCW 9.94A.120(7)(a)(ii). The judge cannot make this decision without first knowing whether the offender is amenable to treatment. A statute must be read as a whole giving effect to all of the language used. *Alderwood Water Dist. v. Pope & Talbot, Inc.*, 62 Wn.2d 319, 321, 382 P.2d 639 (1963). *See also State v. S.P.*, 110 Wn.2d 886, 890, 756 P.2d 1315 (1988). "Each provision must be viewed in relation to other provisions and harmonized if at all possible to insure proper construction of every provision." *Addleman*, at 509. Hence, to harmonize the provisions of the SSOSA statute and insure proper statutory construction, RCW 9.94A.120(7)(a)(i) cannot be construed, as the State suggests, to deny trial court authority to order the expenditure of public funds for the first evaluation.

Finally, as discussed earlier, CrR 3.1(f) authorizes the expenditure of public funds for expert services requested by an indigent defendant. *State v. Dickamore*, 22 Wn. App. 851, 854, 592 P.2d 681 (1979). Presumably, the Legislature did not include language in RCW 9.94A.120(7) regarding the court's authority to order the expenditure of public funds for the initial SSOSA evaluation, because it recognized that CrR 3.1(f) already provides the trial court with that authority.[2] *See In re Foreclosure of Liens*, 117 Wn.2d 77, 86, 811 P.2d 945 (1991) (the Legislature is presumed to know existing case law in areas in which it is legislating).

Based on the foregoing, we must reject the State's proposed construction of RCW 9.94A.120(7) because it essen-

---

[2]The costs of these services are, however, recoverable from the defendant in the event of conviction. RCW 9.94A.120(7)(a)(ii)(B)(IV).

tially repeals the provision dealing with second evaluations for indigent defendants, for as a practical matter, if funds are not available for an indigent defendant's requisite first evaluation, the need for a subsequent evaluation will never arise. Moreover, to suggest the SSOSA option is only available to those offenders who can afford the initial evaluation does not give effect to the intent of the Legislature. Nor is it reasonable to conclude that the Legislature intended to create a special sentencing provision only for sex offenders with personal means.

The decision to order a SSOSA evaluation is discretionary with the trial court. We conclude that, pursuant to CrR 3.l(f) and RCW 9.94A.120(7), the decision to order the expenditure of public funds for the requisite evaluation is also within the trial court's discretion. The order of the trial court is affirmed.

DURHAM, C.J., UTTER, DOLLIVER, SMITH, GUY, and JOHNSON JJ., and ANDERSEN and BRACHTENBACH, JJ. Pro Tem., concur.