[No. 30735-5-I. Division One. January 17, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. MELVIN DOUGLAS ADAMS, *Appellant*.

*Bruce Brown,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Marilyn Nowogroski, Deputy,* for respondent.

COLEMAN, J. — Melvin Adams appeals two trial court orders. One order authorized administration of antipsychotic medication against his will, the other denied his motion to appoint an expert at a *Harper* hearing. *Washington v. Harper,* 494 U.S. 210, 108 L. Ed. 2d 178, 110 S. Ct. 1628 (1990). Adams challenges the constitutionality of these orders, alleging violations of due process, fair trial, and First Amendment rights. We affirm.

Adams was charged with first degree assault in January 1991. Based on a competency evaluation conducted by Western State Hospital, the trial court found Adams incompetent to stand trial and ordered commitment for evaluation and treatment. Adams refused medication. The trial court conducted a *Harper* hearing to reassess Adams' competency to stand trial and to determine the need for medication against his will. Dr. Howard Kim, a forensic psychiatrist at Western State Hospital, testified at the hearing that Adams was diagnosed with schizo-affective disorder, which encompasses a mood disorder and a thinking disorder. Dr. Kim indicated that mood disorders can be treated with lithium carbonate or Tegretol.

Thought disorders may be treated with Haldol, an antipsychotic drug. Dr. Kim testified that, when Adams had taken it, Haldol had been "very effective" in making him competent. Dr. Kim believed Adams would be competent to stand trial if given Haldol. Dr. Kim testified that, when not on medication, Adams acted "angry and aggressive and somewhat dangerous" to others. Adams had been violent and assaultive at the hospital when he was not taking medication and spent several weeks in restraints as a result. Dr. Kim was not aware of any way to make Adams competent other than antipsychotic medication. He specifically discussed why one alternative, psychiatric counseling, would be ineffective.

Dr. Kim reviewed the side effects that Haldol can produce, including blurry vision, dry mouth, akathisia, tardive dyskinesia, and tardive dysmature. Adams had complained of akathisia, defined as a restless or uneasy feeling. Adams had told Dr. Kim that Haldol made him feel homicidal and ready to "jump out of my own skin". Dr. Kim explained that akathisia is an unusual physical stimulation of nerve endings and is "controlled easily by [other] medication". He noted that Adams had taken side-effect medicine while he was on Haldol. In addition, an eye specialist had checked Adams' vision for any adverse effect on his glaucoma.

At the time of the hearing, Adams had not shown any signs of tardive dyskinesia or of tardive dysmature. Dr. Kim defined tardive dyskinesia as involuntary muscle movements in the face, arms, or legs resulting from long-term medication and tardive dysmature as permanent memory impairment. Dr. Kim testified that he keeps drug dosages to a minimum and checks patients frequently to avoid these side effects.

At the hearing, the court questioned Adams' competency to stand trial and found that

[t]he State has a compelling interest in having Mr. Adams be clearly competent to assist his counsel in the defense of that charge. Such a compelling state interest justifies the administration of medicine.

The Court finds that treatment with Haldol is both necessary . . . and would be effective in bringing Mr. Adams to a competent state.

In the order authorizing medication of Adams against his will, the court stated:

There is reason to doubt defendant's competency. The State's compelling interest in trying defendant justifies the administration of Haldol against defendant's will; Haldol is necessary and effective in causing defendant to regain competency, Haldol shall be administered in the minimum dosage necessary under his psychiatrist's care; the psychiatrist shall take all precautions to minimize side-effects and effects on defendant's glaucoma.

At the *Harper* hearing, Adams moved to obtain an expert witness. Adams supported his request only by stating that he believed Dr. Kim had "told a lot of lies on the stand" and the record had "a lot of nonsense in it". The court denied that motion.

After administration of Haldol against Adams' will, the court found him competent to stand trial. At trial, Adams asserted that he had acted in self-defense. The jury convicted him of first degree assault.

We initially determine whether the trial court abused its discretion when it denied Adams' motion to appoint an inde-

pendent expert.[1] Adams, an indigent defendant, argues that the trial court abused its discretion because it denied his request for an independent expert on untenable grounds.

■■ CrR 3.1(f) provides that an indigent defendant may move for state funds for expert services if those services are necessary to an adequate defense. This rule assumes a constitutional dimension because it requires expenditure for expert services when they are necessary. *State v. Hermanson*, 65 Wn. App. 450, 452, 829 P.2d 193, *review denied sub nom. State v. Heath*, 120 Wn.2d 1016 (1992). The decision to grant or deny a motion for expert services lies within the sound discretion of the trial court. *Hermanson*, at 452. This decision will be reversed on appeal only on a showing of clear abuse of discretion. Abuse of discretion is "discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." ' " *Mount Vernon v. Cochran*, 70 Wn. App. 517, 523, 855 P.2d 1180 (1993) (quoting *State v. Mines*, 35 Wn. App. 932, 935, 671 P.2d 273 (1983), *review denied*, 101 Wn.2d 1010 (1984)), *review denied*, 123 Wn.2d 1003 (1994).

The defendant must demonstrate that the requested expert services are necessary to an adequate defense. *See Mines*, at 936-37. Adams asserts on appeal that an independent psychiatrist was necessary to his defense. Adams requested this expert at the *Harper* hearing without specifying his reason. He did not offer an insanity defense at trial, nor does the record reveal that he considered such a defense. The trial court framed Adams' request as "a motion to appoint an independent expert for the defense on the issue of the necessity and effectiveness of forced psychotropic medication". On appeal, Adams argues that an independent psychiatrist was necessary to assess the effect the drug would have on Adams' appearance to the jury and ability to effectively interact with counsel.

■ The record fails to clarify for what purpose Adams requested an independent expert. Expert testimony at a

---

[1]Adams requested a psychologist during the competency hearing. Adams' counsel on appeal states that Adams asked for a psychiatrist.

*Harper* hearing as to the necessity and effectiveness of medication is not necessary to an adequate defense of the crime charged. The trial court considered adequate evidence at the hearing on the issue of the necessity and effectiveness of the proposed medication. There is no evidence that Adams requested an expert to testify as to how he would appear to a jury if he took Haldol. Without a record of why Adams moved to receive funds for an expert, we cannot find that the trial court denied his motion on untenable grounds. Thus, we find the trial court did not abuse its discretion when it denied Adams' request for an independent expert.

Finally, we consider whether the trial court violated Adams' constitutional rights when it authorized medication against Adams' will in order to make him competent to stand trial. Adams argues that the trial court violated several constitutional provisions when it ordered administration of medication against his will. The federal and state constitutional rights that Adams claims were violated fall into three groups: due process, fair trial, and First Amendment rights.

 Courts have defined a criminal defendant's right to be free of unwanted antipsychotic medication under several constitutional provisions. Due process encompasses a liberty interest and a right to privacy.[2] A criminal defendant has a liberty interest in being free from unwanted medical treatment under the Fourteenth Amendment's due process clause. *Riggins v. Nevada*, 504 U.S. 127, 118 L. Ed. 2d 479, 112 S. Ct. 1810, 1814 (1992). A criminal defendant also holds a privacy interest " 'in independence in making certain kinds of important decisions", including whether or not to take antipsychotic medication. *Bee v. Greaves*, 744 F.2d 1387, 1393 (10th Cir. 1984) (quoting *Whalen v. Roe*, 429 U.S. 589, 599-600, 51 L. Ed. 2d 64, 97 S. Ct. 869 (1977)), *cert. denied*, 469 U.S. 1214 (1985). Fair trial rights include the right to be present at

---

[2]Some courts have characterized the right to be free of unwanted antipsychotic medication as a liberty interest, others as a privacy interest. *See United States v. Charters*, 829 F.2d 479, 491 (4th Cir. 1987), *remanded on rehearing*, 863 F.2d 302 (1988), *cert. denied*, 494 U.S. 1016 (1990).

trial, the right to testify on one's own behalf, and the right to effective assistance of counsel.[3] Side effects of antipsychotic medication may prejudice these rights. *Riggins*, 112 S. Ct. at 1817, 1819 (Kennedy, J., concurring). The First Amendment protects the capacity to produce ideas. Antipsychotic drugs implicate First Amendment protection because of their potential impact on an individual's ability to think and communicate. *Greaves*, at 1393-94.

These constitutional protections are not absolute, however. *Riggins*, 112 S. Ct. at 1816; *State v. Lover*, 41 Wn. App. 685, 688-89, 707 P.2d 1351 (1985). The right to remain free from mind-controlling drugs may be outweighed by a state interest in bringing an accused to trial. *Riggins*, 112 S. Ct. at 1815; *Lover*, at 688-90. Although the Supreme Court has declined to establish a substantive standard by which to assess this balance, *Riggins*, 112 S. Ct. at 1815 (using the term "essential state interest"), state law requires a compelling state interest. *See Lover*, at 690. The State meets this requirement, under either characterization, by showing that it could not obtain an adjudication of a criminal defendant's guilt or innocence by less intrusive means than medically appropriate, involuntary treatment with antipsychotic medication. *See Riggins*, 112 S. Ct. at 1815; *Lover*, at 690. This balancing test applies to each of the constitutional rights Adams claims was violated.

Thus, a court may order administration of antipsychotic medication against a criminal defendant's will when it determines that (1) the proposed medication is medically appropriate and necessary to help the defendant become competent to stand trial and (2) no less intrusive method exists for achieving competency to stand trial. *See Riggins*, 112 S. Ct. at 1815; *Lover*, at 690.[4]

---

[3]Adams argues in his pro se brief that forced medication denied him the right to counsel of his own choosing because he was unable to discharge his attorney while under the influence of Haldol. Although case law has not recognized this alleged right, it would be assessed under the same analysis as a fair trial right.

[4]Adams unconvincingly seeks to distinguish *Lover* from the present facts. Curiously, Adams argues that the court in *Lover* relied on "questionable precedent" when it quoted from Justice Brennan's concurring opinion in *Illinois v.*

The trial court in the present case properly made these determinations. The court made explicit findings as to the State's compelling interest and the necessity and effectiveness of the medication to make the defendant competent to stand trial. The hearing transcript reflects testimony on the unavailability of alternatives. Therefore, the trial court did not violate Adams' constitutional rights when it authorized forced medication.

Adams urges this court to follow Justice Kennedy's concurring opinion in *Riggins*. Justice Kennedy posits that a State's interest in bringing criminal defendants to trial is not sufficiently compelling to justify the forced administration of antipsychotic drugs, based on the impact of *potential* side effects on the ability to present a defense. In Kennedy's view, the State must first show that no significant risk exists that the antipsychotic medication would materially impair or alter a defendant's capacity or willingness to react to the testimony at trial or to assist his counsel. *Riggins*, 112 S. Ct. at 1817-18 (Kennedy, J., concurring). He then doubts that the State would ever be able to make this showing. *Riggins*, 112 S. Ct. at 1818 (Kennedy, J., concurring).

We reject this invitation and decline to depart from *Riggins* and *Lover* in the absence of any showing of actual prejudice at trial. The orders of the trial court are affirmed.

GROSSE and KENNEDY, JJ., concur.

Review denied at 126 Wn.2d 1016 (1995).

---

*Allen*, 397 U.S. 337, 25 L. Ed. 2d 353, 90 S. Ct. 1057 (1970). However, the Supreme Court approvingly quoted the same language in *Riggins*, a case Adams cites frequently in his brief. *See Riggins*, at 1815.