[No. 31482-7-II. Division Two. September 13, 2005.]

THE STATE OF WASHINGTON, *Respondent*, v. JESUS HERNANDEZ-RAMIREZ, *Appellant*.

---

*Stephanie C. Cunningham*, for appellant.

*Gerald A. Horne, Prosecuting Attorney*, and *P. Grace Kingman, Deputy*, for respondent.

¶1 QUINN-BRINTNALL, C.J. — The State charged Jesus Hernandez-Ramirez with one count of violation of a protective order and one count of fourth degree assault. At a pretrial competency hearing, the trial court allowed the State to administer antipsychotic drugs to Hernandez-Ramirez to render him competent to stand trial. The case proceeded to trial and the trial court found Hernandez-Ramirez guilty as charged. Hernandez-Ramirez now appeals the trial court's order allowing involuntary medication. Holding that antispyschotic medication was properly administered to render Hernandez-Ramirez competent to stand trial, we affirm.

FACTS

¶2 On July 20, 2003, Pierce County Sheriff's Deputies responded to a 911 domestic violence call in Gig Harbor, Washington and arrested Hernandez-Ramirez.

¶3 The State charged Hernandez-Ramirez with one count of violation of a protective order and one count of fourth degree assault. On defense motion, the court below ordered that Hernandez-Ramirez undergo a competency evaluation. Dr. Phyllis Knopp, a psychologist from Western State Hospital, submitted a competency evaluation on August 29, 2003. She diagnosed Hernandez-Ramirez with "Psychotic Disorder Not Otherwise Specified," "Rule Out Amphetamine Induced Psychotic Disorder with Delusions," and a history of amphetamine, cannabis, and cocaine abuse. Clerk's Papers (CP) at 15. In her evaluation, Dr. Knopp concluded that Hernandez-Ramirez required treatment for mental illness and requested judicial authority for involuntary treatment with psychotropic medications. According to Dr. Knopp's evaluation, "[t]here would be no less intrusive form of treatment other than psychotropic medications." CP at 16.

¶4 The court conducted a hearing to determine Hernandez-Ramirez's competency to stand trial and the necessity of involuntary medication. At the competency hearing, the court heard testimony from Dr. Knopp and psychiatrist Dr. Margaret Dean.

¶5 Dr. Knopp testified that Hernandez-Ramirez did not have the capacity to understand the charges against him or to assist his attorney in his own defense. When questioned, Dr. Knopp clarified what she meant by the "Rule Out Amphetamine Induced Psychotic Disorder with Delusions" portion of her diagnosis:

Q  Okay. What is rule out amphetamine induced psychotic disorder with delusions?

A  My intuition tells me that is really what Mr. Hernandez-Ramirez's problem is. He probably did not have psychotic symptoms prior to two years ago, and that the reason why

he has psychotic delusions now is based on his use of crank, which is amphetamines. But I don't have enough information to specifically make that diagnosis.

Q  Okay. And when you don't have enough information to make the diagnosis, is that what the "rule out" part of it means?

A  Yes. That's why I put that as the top diagnosis, but to rule out amphetamine induced psychotic disorder with delusions, because my clinical intuition tells me that's probably what's really going on.

Report of Proceedings (RP) (Oct. 2, 2003) at 27-28.

¶6 Dr. Knopp further testified that antipsychotic medication would be a necessary component of Hernandez-Ramirez's treatment and that there were no less intrusive forms of treatment available. She indicated that Hernandez-Ramirez's level of dangerousness was high.

¶7 Dr. Dean also testified that antipsychotic medication would restore Hernandez-Ramirez's ability to proceed to trial. She agreed that it was possible Hernandez-Ramirez was suffering from psychosis induced by his use of methamphetamine. She testified that in most cases, when a psychosis is substance induced, the symptoms and psychoses generally clear over time without treatment. Dr. Dean also explained that methamphetamine abuse may cause permanent damage:

In most cases, if the psychosis is truly substance induced, then with a long enough period of abstinence then those psychoses generally clear. However, in the case of methamphetamines, unfortunately, there are some occasions when the alteration in brain chemistry and the brain damage caused by the methamphetamine use turns out to have permanent consequences such that the individual ends up looking as though they have schizophrenia because the psychosis doesn't clear up even if they stop using the meth[amphetamines].

RP (Oct. 2, 2003) at 65-66.

¶8 Dr. Dean further testified that Hernandez-Ramirez's symptoms could be alleviated with antipsychotic medica-

tion and that this would be the indicated treatment "whether the original trigger was methamphetamine use or pure schizophrenia." RP (Oct. 2, 2003) at 66. She also testified that medication would alleviate some of the concerns regarding Hernandez-Ramirez's dangerousness:

> [A]ll of those risk factors for future aggressive behavior and for future reoffending would be expected to be ameliorated if he were to comply with medication treatment.

RP (Oct. 2, 2003) at 53.

¶9 After considering the testimony presented at the competency hearing, the court entered an order allowing the State to forcibly administer medication. In so doing, the court found that Hernandez-Ramirez was dangerous and charged with a serious crime; that he was not competent to stand trial; and that involuntary medication was medically appropriate and necessary to further important State interests.

¶10 Hernandez-Ramirez waived his right to a jury and the bench trial began on February 18, 2004. At trial, Maria Hernandez, his wife, testified through an interpreter that Hernandez-Ramirez had pulled her hair, hit her, and pushed her down a flight of stairs. She testified that she obtained a protective order against Hernandez-Ramirez and that she had told him about the order. Other witnesses testified as to the validity and the proper service of the protective order. The trial court found Hernandez-Ramirez guilty as charged. Hernandez-Ramirez appeals the trial court's order allowing involuntary medication, arguing that his conviction should be reversed as a result.

## ANALYSIS

¶11 Hernandez-Ramirez asserts that the trial court erred when it entered an order allowing involuntary medication to render him competent to stand trial. Specifically, he challenges the trial court's finding that involuntary medication was necessary to further the State's interests. He contends that the record fails to establish the unavailability of less intrusive treatment methods, such as waiting to see if he would cycle out of his psychosis naturally.

¶12 An individual has a significant constitutionally protected liberty interest in avoiding the unwanted administration of antipsychotic drugs. *Washington v. Harper*, 494 U.S. 210, 221-22, 110 S. Ct. 1028, 108 L. Ed. 2d 178 (1990). The involuntary injection of such drugs represents an interference with a person's right to privacy, right to produce ideas, and ultimately the right to a fair trial. *Riggins v. Nevada*, 504 U.S. 127, 134, 112 S. Ct. 1810, 118 L. Ed. 2d 479 (1992) (quoting *Harper*, 494 U.S. at 229); *State v. Adams*, 77 Wn. App. 50, 56, 888 P.2d 1207, *review denied*, 126 Wn.2d 1016 (1995).

¶13 Nevertheless, the constitution permits the government to involuntarily administer antipsychotic drugs to a mentally-ill defendant facing serious criminal charges when four requirements are satisfied. *Sell v. United States*, 539 U.S. 166, 180-81, 123 S. Ct. 2174, 156 L. Ed. 2d 197 (2003). The State[1] must show that: (1) important governmental interests are at stake; (2) administration of medication is substantially likely to render the defendant competent to stand trial and substantially unlikely to have side effects that may undermine the fairness of the trial; (3) involuntary medication is necessary to further the State's interests; and (4) administration of the medication is medically appropriate. *Sell*, 539 U.S. at 180-81.

¶14 Alternatively, *Sell* permits the involuntary administration of antipsychotic medication to render the defendant nondangerous to himself or to others. 539 U.S. at 182. A determination of dangerousness constitutes an independently sufficient reason to justify involuntary medication and renders the competency analysis unnecessary. *Sell*, 539 U.S. at 183. If a court authorizes medication to render the defendant nondangerous, it need not consider authorizing it on trial competence grounds. *Sell*, 539 U.S. at 183.

¶15 The State bears the burden of proving each element justifying involuntary medication with clear, cogent, and

---

[1] RCW 71.05.370(7) allows antipsychotic drugs to be administered without an individual's consent only by court order after a judicial hearing. *In re Det. of Schuoler*, 106 Wn.2d 500, 510, 723 P.2d 1103 (1986).

convincing evidence. RCW 71.05.370(7); *In re Det. of Schuoler*, 106 Wn.2d 500, 510, 723 P.2d 1103 (1986). Where the trial court has weighed the evidence, our review is generally limited to determining whether substantial evidence supports the findings and, if so, whether the findings in turn support the trial court's conclusions of law and judgment. *In re Det. of LaBelle*, 107 Wn.2d 196, 209, 728 P.2d 138 (1986).

COMPETENCY

¶16  Hernandez-Ramirez challenges only the trial court's finding that involuntary medication was necessary to render him competent to stand trial.

¶17  In order to find that involuntary medication is necessary to restore competence, the trial court must conclude that any alternative, less intrusive treatments are unlikely to achieve substantially similar results. *Sell*, 539 U.S. at 181. The trial court must also consider less intrusive means for administering the drugs, such as a court order backed by contempt power. *Sell*, 539 U.S. at 182.

¶18  At the competency hearing, Dr. Knopp testified that the disorder experienced by Hernandez-Ramirez is typically treated with antipsychotic medications and that other forms of treatment would not be as effective. She also stated that, in her professional opinion, therapy or noninvasive treatment would not impact the delusions suffered by Hernandez-Ramirez. According to Dr. Knopp's evaluation, "[t]here would be no less intrusive form of treatment other than psychotropic medications." CP at 16.

¶19  Dr. Dean confirmed that antipsychotic medications are commonly used to treat Hernandez-Ramirez's diagnosis and that it was highly likely that he would respond favorably to the drugs.

¶20  In *United States v. Gomes*, 387 F.3d 157 (2d Cir. 2004), *cert. denied*, 543 U.S. 1128 (2005), the Second Circuit found that forced medication was necessary to further a government interest when two doctors noted a

"substantial probability" that antipsychotic medication would render the defendant competent and testified that alternative forms of treatment would be ineffective. 387 F.3d at 161. The *Gomes* court pointed out that the defendant did not provide any evidence as to the efficacy of alternative therapy for general psychotic disorder. Similarly, here, the State presented substantial testimony that medication was necessary and there was no evidence that other treatment options would be as effective.

¶21 Further, Hernandez-Ramirez has consistently claimed that he is mentally sound and has refused to take the medications prescribed to him. Therefore, the trial court correctly concluded that any less intrusive means for administering the medication would not be effective.

¶22 Here, the trial court properly conducted the *Sell* four-part inquiry. 539 U.S. at 180-81. It found that the State had a compelling interest in bringing Hernandez-Ramirez to trial in a timely manner and that medication would render him competent to stand trial. The trial court further found that the prescribed medication was necessary and medically appropriate to alleviate Hernandez-Ramirez's delusional beliefs and that he would experience few side effects as a result. And finally, the trial court determined that any potential side effects would not interfere with Hernandez-Ramirez's ability to assist counsel at trial.

¶23 The competency hearing transcript reflects substantial medical testimony on the necessity of involuntary medication due to the unavailability of feasible alternatives and supports the trial court's conclusions with clear, cogent, and convincing evidence. Thus, the trial court did not violate Hernandez-Ramirez's constitutional rights when it authorized involuntary medication to render him competent to stand trial. Accordingly, we affirm the trial court's ruling allowing involuntary medication to restore competency.

¶24 Because we find that the trial court satisfied the *Sell* requirements and properly ordered that Hernandez-Ramirez be medicated, we do not address whether the trial

court improperly required him to take antipsychotic medications to render him nondangerous.[2]

¶25  We affirm.

ARMSTRONG and HUNT, JJ., concur.

---

[2] We note that *Sell* addressed whether a defendant had a legal right to avoid involuntary medication, in part because it could make the trial unfair. But this is a different question from whether involuntary medication *did* make the trial unfair. *Sell*, 539 U.S. at 177. *Sell* suggests that the first question focuses on the right to avoid administration of psychotropic drugs and that the court may review the issue before the drugs are administered. 539 U.S. at 176. *Sell* further suggests that a defendant who is wrongfully medicated may have his conviction reversed, provided he can establish that the medication affected his right to a fair trial. 539 U.S. at 177. Here, Hernandez-Ramirez has presented no evidence to show that involuntary medication made his trial unfair.