[No. 61445-2-I.   Division One.   March 30, 2009.]

THE STATE OF WASHINGTON, *Respondent*, v. LEEMAH CARNEH, *Petitioner*.

*Louis A. Frantz* and *Carl F. Luer* (of *Associated Counsel for the Accused*), for petitioner.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Roger S. Davidheiser* and *James J. Konat, Deputies*, for respondent.

¶1 AGID, J. — The State charged Leemah Carneh with four counts of aggravated murder in March 2001. After extensive and periodically successful competency restoration treatment, the trial court ultimately dismissed the case

without prejudice because it found Carneh was incompetent to stand trial at that time. The State refiled charges after learning that Carneh had shown signs of improvement while he was civilly committed. Carneh appeals from the trial court's order requiring him to undergo additional competency restoration. We hold that the trial court reacquired criminal jurisdiction after the prosecutor properly relied on Carneh's improved condition as a good faith basis for refiling charges. Because Carneh was incompetent and reasonably likely to regain competency, the trial court was required to order further competency restoration for Carneh.

## FACTS

¶2 On March 8, 2001, someone murdered Richard and Leola Larson; their grandson, Taelor Marks; and his girl friend, Josie Peterson, in the Larsons' home. In March 2001, the police arrested Leemah Carneh, and the State charged him with four counts of aggravated first degree murder. Carneh was found incompetent in September 2001 based on reports from Dr. Dale Watson, a defense expert, and Dr. Janet Schaeffer of Western State Hospital (WSH). The trial court ordered Carneh to undergo a 90 day competency restoration at WSH, where he was treated with Risperidone, an antipsychotic medication.[1] After the 90 day commitment, Dr. Schaeffer reported that Carneh had gained the capacity to rationally assist in his defense. Dr. James Wood, a defense expert, agreed that Carneh was competent despite suffering from a severe mental disorder. The trial court found Carneh competent in February 2002, but he decompensated while in jail and was recommitted to WSH for a 90 day restoration. Following this restoration, the trial court found Carneh competent to stand trial again in September 2002.

¶3 The case proceeded to trial, and Carneh pled not guilty by reason of insanity. Carneh decompensated again

---

[1] The trial court granted WSH permission to administer psychotropic medications to Carneh, against his will if necessary.

while the trial was delayed for an interlocutory appeal.[2] The trial court found Carneh incompetent and ordered him to WSH for a 90 day competency restoration in June 2004 and for an additional 90 day period in September 2004. Carneh was reevaluated and recommitted for a final 180 day competency restoration in December 2004. In September 2005, the trial court heard testimony from four experts on Carneh's competency. All experts agreed that Carneh is a paranoid schizophrenic who suffers from delusions but that he had the capacity to understand the nature of the charges against him. The experts disagreed about whether Carneh could rationally assist in his own defense. The trial court found that Carneh's delusions prevented him from assisting in his defense and dismissed the case without prejudice under former RCW 10.77.090(4) (2002). The trial court also found there was reason to believe that Carneh's competency would be restored because it had been restored twice, his medication appeared to be having the desired effects on his symptoms, and the full benefits of the medication would not occur until 2006. After the criminal charges were dismissed, Carneh was civilly committed to WSH.

¶4 On October 10, 2007, Dr. Murray Hart of WSH sent notice to the prosecutor that

> Mr. Carneh will be moved to a ward within WSH where he can earn [g]rounds privileges without constant accompaniment of WSH staff on either the unsecured grounds of WSH or within the community. . . .
>
> As the criminal charges against Mr. Carneh were dismissed without prejudice, your office could re-file these charges at any time. . . . At this time we can offer no opinion on competency

---

[2] The State sought discretionary review of the trial court's ruling that Carneh's insanity plea did not waive his right to refuse to answer incriminating questions during the State's insanity evaluation. *State v. Carneh*, 153 Wn.2d 274, 280, 103 P.3d 743 (2004). The trial court certified the question to this court, and we accepted review. *Id.* The Washington Supreme Court granted Carneh's motion to transfer the case to the Supreme Court and affirmed the trial court's ruling. *Id.*

until ordered by the court to perform such an evaluation under RCW 10.77.[3]

¶5 On November 13, 2007, the State refiled charges against Carneh, and the trial court ordered WSH to evaluate Carneh's competency. The January 14, 2008 evaluation report stated that Carneh was not competent to stand trial because he was not able to understand the case against him and could not assist in his defense. The competency report also stated that treatment options had not been exhausted and recommended further attempts at competency restoration.

¶6 Carneh moved to dismiss the charges, and the State asked the court to order competency restoration. Both parties agreed that Carneh was not competent and that there is a reasonable probability that his competence could be restored with appropriate treatment, although Carneh objected to the 90 day competency restoration commitment. On February 25, 2008, the trial court found that Carneh was incompetent, but that the prosecutor had a good faith basis for refiling charges against him. The trial court ordered a 90 day competency restoration and certified for review the question of its authority to order further restoration. Carneh sought discretionary review, which we granted. Because Carneh did not seek a stay pending appeal, proceedings continued in superior court. On May 23, 2008, the trial court found that Carneh remained incompetent after the 90 day commitment and ordered him recommitted for an additional 90 days.

## DISCUSSION

¶7 Former RCW 10.77.090 (2002), now codified as RCW 10.77.086(4),[4] authorized the trial court's initial orders committing Carneh to WSH for 90 day competency resto-

---

[3] (Alterations in original.)

[4] *See* LAWS OF 2007, ch. 375, § 1: "The legislature finds that RCW 10.77.090 contains laws relating to three discrete subjects. Therefore, one purpose of this act

ration treatments.[5] Former RCW 10.77.090(1)(d)(i)(C)(ii) (2002), now codified as RCW 10.77.086(3), authorized the additional 90 day commitment.[6] And former RCW 10-.77.090(4) (2002), now codified as RCW 10.77.086(4), provided for Carneh's final 180 day competency restoration treatment.[7]

¶8 Carneh argues that the trial court lacked jurisdiction to recommit him because the prosecutor did not have the authority to refile charges while he remained incompetent. The State counters that a person's incompetence does not deprive the State of its authority to file charges, which is the event that vests the superior court with jurisdiction. The trial court's jurisdiction is a question of law subject to de novo review.[8] While prosecutors may not

is to reorganize some of those laws by creating new sections in the Revised Code of Washington that clarify and identify these discrete subjects."

[5] RCW 10.77.086(1) provides:

If the defendant is charged with a felony and determined to be incompetent, until he or she has regained the competency necessary to understand the proceedings against him or her and assist in his or her own defense, or has been determined unlikely to regain competency pursuant to RCW 10.77.084(1)(c), but in any event for a period of no longer than ninety days, the court:
  (a) Shall commit the defendant to the custody of the secretary who shall place such defendant in an appropriate facility of the department for evaluation and treatment.

[6] RCW 10.77.086(3) states:

If the court finds by a preponderance of the evidence that a defendant charged with a felony is incompetent, the court shall have the option of extending the order of commitment or alternative treatment for an additional ninety-day period.

[7] RCW 10.77.086(4) provides:

For persons charged with a felony, at the hearing upon the expiration of the second ninety-day period . . . , if the jury or court finds that the defendant is incompetent, the charges shall be dismissed without prejudice, and either civil commitment proceedings shall be instituted or the court shall order the release of the defendant. The criminal charges shall not be dismissed if the court or jury finds that: (a) The defendant (i) is a substantial danger to other persons; or (ii) presents a substantial likelihood of committing criminal acts jeopardizing public safety or security; and (b) there is a substantial probability that the defendant will regain competency within a reasonable period of time. In the event that the court or jury makes such a finding, the court may extend the period of commitment for up to an additional six months.

[8] *Crosby v. Spokane County*, 137 Wn.2d 296, 301, 971 P.2d 32 (1999).

try an incompetent defendant,[9] competence is not a prerequisite for charging an individual with a crime.[10] For example, in *State v. Lewis*,[11] *State v. Adams*,[12] and *State v. Lover*,[13] the State filed charges before the court made a competency determination. And for good reason: the superior court does not acquire subject matter jurisdiction over a criminal matter until the State files an information charging a felony offense.[14] Thus, absent the filing of charges, a court does not otherwise have the authority to order an individual to undergo a 15 day competency evaluation under RCW 10.77.060.[15] This jurisdictional limitation

---

[9] "No incompetent person shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues." RCW 10.77.050. A person is competent to stand trial if he has the capacity to understand the nature of the charges against him and can assist in his defense. *State v. Ortiz*, 119 Wn.2d 294, 831 P.2d 1060 (1992).

[10] *See, e.g.*, *State v. Adams*, 77 Wn. App. 50, 52, 888 P.2d 1207 (defendant charged, evaluated, and found incompetent), *review denied*, 126 Wn.2d 1016 (1995).

[11] 141 Wn. App. 367, 381, 166 P.3d 786 (2007) (defendant charged, evaluated, and found incompetent), *review denied*, 163 Wn.2d 1030 (2008).

[12] 77 Wn. App. 50, 52, 888 P.2d 1207, *review denied*, 126 Wn.2d 1016 (1995).

[13] 41 Wn. App. 685, 687, 707 P.2d 1351 (1985) (defendant, a diagnosed paranoid schizophrenic, was charged, evaluated, and found incompetent).

[14] *State v. Barnes*, 146 Wn.2d 74, 81, 43 P.3d 490 (2002). RCW 9A.04.030(1) provides the superior court with personal jurisdiction over all individuals who commit crimes in this state. *See State v. Breedlove*, 79 Wn. App. 101, 111, 900 P.2d 586 (1995).

[15] RCW 10.77.060(1)(a) provides:

Whenever a defendant has pleaded not guilty by reason of insanity, or there is reason to doubt his or her competency, the court on its own motion or on the motion of any party shall either appoint or request the secretary to designate at least two qualified experts or professional persons, one of whom shall be approved by the prosecuting attorney, to examine and report upon the mental condition of the defendant. . . . For purposes of the examination, the court may order the defendant committed to a hospital or other suitably secure public or private mental health facility for a period of time necessary to complete the examination, but not to exceed fifteen days from the time of admission to the facility.

is reflected in the wording of RCW 10.77.060, which applies only to "defendants" and not to all individuals.[16]

¶9 Carneh does not dispute that prosecutors may file charges before making a competency determination but argues that known incompetency bars refiling. His position is that the State could not refile charges against an incompetent person until there has been a demonstrated change in that person's capacity to stand trial. The statutory scheme does not support Carneh's position. After the trial court dismissed charges *without* prejudice, it lost the authority to order competency evaluation under RCW 10.77-.060 unless the State refiles charges. As the State notes, Carneh's rationale would result in a rule barring future prosecution because the statutory scheme prohibits the court from revisiting its prior determination of incompetency. By requiring that "the charges shall be dismissed *without prejudice*" after "the jury or court finds that the defendant is incompetent,"[17] the legislature reserved the prosecutor's ability to refile charges. The legislature also made clear that the bar against trying incompetent defendants lasts only "so long as such incapacity continues."[18]

¶10 This does not mean that the legislature granted unfettered discretion to prosecutors to file charges at any time. Instead, they must act in good faith.[19] Additionally, a prosecutor's " 'decision to file criminal charges,

---

[16] The civil commitment statute, chapter 71.05 RCW, provides the superior court with the civil jurisdiction to detain and evaluate individuals who present a likelihood of serious harm as a result of a mental disorder. *See* RCW 71.05-.150(2)(a). RCW 71.05.120 authorizes an evaluation facility to examine the person involuntarily detained for the likelihood of serious harm. RCW 71.05.280 and 71.05.320 authorize additional confinement for a person who had criminal charges dismissed on the basis of incompetence if, as a result of a mental disorder, the person presents a substantial likelihood of repeating similar acts. But chapter 71.05 RCW does not authorize a competency evaluation, which requires examining a defendant's ability to understand the charges brought and to assist in his or her own defense.

[17] RCW 10.77.086(4) (emphasis added); *accord* former RCW 10.77.090 (2002).

[18] RCW 10.77.050.

[19] *State v. Manthie*, 39 Wn. App. 815, 820, 696 P.2d 33, *review denied*, 103 Wn.2d 1042 (1985).

with the awesome consequences it entails, requires consideration of a wide range of factors in addition to the strength of the Government's case, in order to determine whether prosecution would be in the public interest.' "[20] Thus, prosecutors who refile charges against incompetent individuals must have a good faith basis to believe that the procedures outlined in chapter 10.77 RCW will likely lead to the restoration of a defendant's competency to stand trial.[21]

¶11 Here, the trial court found that the letter about Carneh's improved condition provided the prosecutor with a good faith basis to refile charges. We review the application of the law to facts de novo.[22] The prosecutor had two reasons to believe that Carneh's competency could be restored. First, before dismissing the case without prejudice, the trial court found "reason to believe that [Carneh's] competency will again be restored."[23] Second, the letter from WSH stated that Carneh would be moved to a ward where he would be able to earn the privilege to move about without accompaniment on the unsecured grounds of WSH or within the community. This clearly implies that his condition is greatly improved and supported the trial court's prediction. The court's finding and the information from WSH provided the prosecutor with a good faith basis to believe that Carneh's competency was improving and would likely be restored. Because the prosecutor properly

_____

[20] *State v. Pettitt*, 93 Wn.2d 288, 295, 609 P.2d 1364 (1980) (quoting *United States v. Lovasco*, 431 U.S. 783, 794, 97 S. Ct. 2044, 52 L. Ed. 2d 752 (1977)).

[21] This standard is also supported by chapter 10.77 RCW's focus on the likelihood that the defendant will regain competency. *See* RCW 10.77.086(4) (barring dismissal of charges before final six month restoration attempt when defendant presents a danger to others or public safety and "there is a substantial probability that the defendant will regain competency within a reasonable period of time"); RCW 10.77.086(1) (requiring competency restoration unless defendant determined unlikely to regain competency); RCW 10.77.084(1)(d) (requiring dismissal of proceedings and evaluation for civil commitment when the court finds the defendant is not likely to regain competency).

[22] *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 403, 858 P.2d 494 (1993).

[23] The trial court's finding was based on testimony from experts that the medication was having its desired effect and that the full benefit of the medication would not occur until early 2006.

refiled charges against Carneh, the superior court reacquired criminal jurisdiction over this case.

¶12 Finally, Carneh argues that the court did not have the authority to order him committed for a 90 day competency restoration even if charges were properly refiled. Instead, Carneh argues that, at most, the court had jurisdiction for the limited purpose of determining his competency. But, as the State correctly points out, chapter 10.77 RCW requires the court to order treatment for no longer than 90 days when a defendant is incompetent, unless the defendant "has been determined unlikely to regain competency."[24] Here, both sides agreed that Carneh was incompetent, and the defense stipulated that there is medically appropriate treatment available to the doctors at WSH that is reasonably likely to restore the defendant's competency within a reasonable period of time.[25] Accordingly, we hold that the trial court was required to order up to a 90 day competency restoration after the State properly refiled charges.

¶13 We affirm.

Lau and Leach, JJ., concur.

Review denied at 166 Wn.2d 1030 (2009).

---

[24] RCW 10.77.086(1).

[25] After Carneh's competency evaluation, WSH reported the Carneh was incompetent and that "further attempts at competency restoration are warranted" because not all treatment options had been exhausted.