IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53048-1-II |
| Appellant, | |
| v. | |
| AKEEM ISRAEL SLYE, | UNPUBLISHED OPINION |
| Respondent. | |

LEE, C.J. — The State appeals the trial court's order dismissing charges against Akeem I. Slye without prejudice. The State argues the trial court erred by finding that the State lacked a good faith basis to believe that Slye would be able to be restored to competency when it refiled the criminal charges against Slye. The State also argues the trial court erred by concluding no further restoration periods were available in this case when that issue was not a subject of the motion before the trial court.

Because the State did not have a good faith basis to refile the information, the trial court did not err in dismissing the charges without prejudice. Therefore, whether the trial court erred by making conclusions regarding further restoration periods is moot. We affirm.

FACTS

In January 2018, the State charged Slye with first degree rape of a child, two counts of first degree child molestation, and attempted first degree child molestation. The trial court ordered a competency evaluation based on Slye's developmental disability.

Dr. Ray Hendrickson conducted Slye's competency evaluation. Dr. Hendrickson diagnosed Slye with a mild intellectual disability, language disorder, and social (pragmatic) communication disorder. Dr. Hendrickson noted that Slye had previously been evaluated by forensic staff at the Child Study and Treatment Center (CSTC) in 2014 and 2015 based on pending juvenile court charges. After a 90-day restoration period, CSTC staff concluded that restoration was not likely and that Slye was not likely to benefit from further competency restoration treatment.

Throughout his assessment, Dr. Hendrickson noted that Slye did not know many terms associated with criminal charges, but after an explanation was able to recall some of the information. Slye also presented with only a limited understanding of court personnel and criminal trials. Generally, Slye exhibited limited ability to meaningfully interact with his attorney, understand his attorney's advice, or ask questions about things he did not understand. Based on his evaluation of Slye, Dr. Hendrickson opined,

> While Mr. Slye may have a limited ability to have a *factual understanding* of his charges and to a lesser extent, court proceedings, his ability to have a *rational understanding* of court proceedings was significantly limited. Due to his continuing cognitive limitations, he would likely be unable to work with his attorney to assist in his defense.
>
> **In conclusion, Mr. Slye presents with symptoms of a mental disease or defect that significantly impair his ability to have a *rational understanding* of the court proceedings he faces. These symptoms also significantly impair his ability to *consult with his attorney with a reasonable degree of rational understanding*. He would likely be unable to work with and assist his attorney in his defense.**

Clerk's Papers (CP) at 24 (emphasis in original).

Dr. Hendrickson had "considerable doubt" about whether restoration treatment would result in any improvement of Slye's condition. CP at 24. Dr. Hendrickson explained,

> I note that after a 90-day restoration period at CSTC in 2015, he exhibited no significant improvement. Restoration procedures at [Western State Hospital] WSH would be essentially identical to CSTC procedures, and would include education about court proceedings and working with his attorney.

CP at 24. However, Dr. Hendrickson recognized that because Slye had matured since his last restoration treatment, it was possible that "with repetitious explanation of concepts, he could improve to the level of being able to consult with his attorney with a reasonable degree of rational understanding." CP at 24.

The trial court found that Slye was not competent to stand trial. The court ordered a 90-day competency restoration treatment period.

In July 2018, Dr. Johnathan Sharrette performed another competency evaluation following Slye's restoration treatment period. Dr. Sharrette's observations of Syle's understanding of the legal system were consistent with Dr. Hendrickson's observations. Dr. Sharrette opined that Slye was not competent to stand trial. Dr. Sharrette also opined that further restoration treatment was not recommended. Dr. Sharrette explained,

> [Slye's] deficits are not amenable to treatment with psychiatric medication; they are due to cognitive limitation. Additional time and effort are not likely to increase his understanding of competency-related information. His language and intellectual deficits are long-standing and well-documented. After approximately fifteen years of special education and assistance, his language deficits persist, and will not likely improve in the limited amount of time offered by the law. In speaking with his psychiatrist, there is no available psychiatric treatment available that would improve his cognitive or verbal skills.

CP at 149.

The trial court found that Slye continued to be incompetent to stand trial. The court also found that Slye was unlikely to regain competency and further treatment was not likely to restore competency. As a result, the court dismissed the charges without prejudice. Following dismissal, Slye was civilly committed at WSH.

In November 2018, the State refiled the information, charging Slye with first degree rape of a child, two counts of first degree child molestation, and attempted first degree child molestation. The State included a supplemental declaration of probable cause with the refiled information. The State declared,

> These charges were dismissed on July 9, 2018 after the court found the defendant incompetent. The court referred the defendant to Western State Hospital to be evaluated for civil commitment pursuant to RCW 71.05, as required by statute. The defendant has been at Western State Hospital since then. The State was notified on September 21, 2018 that the defendant could qualify for temporary unescorted leaves into the community and that the State would receive 10 days' notice prior to any authorized leave. The State did not receive that particular notice, however, on October 8, 2018 the State was informed that although the defendant's civil commitment under RCW 71.05 does not expire March, 2019, the defendant does not have a mental health diagnosis and is not on medication, therefore he does not meet the criteria to remain at Western State and Western State would be moving toward discharging him into the community prior to the expiration of the civil commitment period. . . . As Western State feels that it does not have a basis for keeping the defendant through his civil commitment period, and because the defendant could be released into the community very soon, the State is refiling these charges.

CP at 179.

The trial court ordered another competency evaluation. In December 2018, Dr. Sharrette completed a new competency evaluation for Slye. Dr. Sharrette's opinions after completing the competency evaluation was substantially similar to the outcome of Slye's two prior evaluations. As to whether restoration treatment should be attempted, Dr. Sharrette opined,

Should the Court find that Mr. Slye is not competent to stand trial, inpatient psychiatric treatment is *typically* recommended toward improving his condition so his competency can be restored. However, Mr. Slye has undergone a competency restoration period earlier this year, as well as in 2015 at the Child Study and Treatment Center. After the 90-day restoration period at CSTC in 2015 there was no significant improvement in his competency; this was again the case for his most recent 90-day restoration period as well. The restoration process would again focus on education regarding court proceedings as well as how to work with his attorney. His limitations are cognitive in nature, and cannot be improved with medication. It is doubtful that another restoration period would have any significant effect on Mr. Slye's competency. Of course, it is ultimately the Court's decision as to restoration.

CP at 251.

A few weeks later, Dr. Sharrette filed an addendum in which he considered additional information regarding Slye's work toward completing his high school education. Dr. Sharrette noted that Slye was completing worksheets in order to obtain credit toward high school graduation. However, the work was being completed under an Individual Education Plan, which allowed Slye to receive credit for classwork based on effort, time on task, and attendance, rather than mastery of any subject area. As a result, Slye was primarily completing fourth grade level worksheets and often got many of the items on the worksheet wrong. Dr. Sharrette noted that the additional information did not change his opinions on competency.

In January 2019, Slye filed a motion to dismiss the charges because the State lacked a good faith basis to refile the information. Slye included an email from Dr. Paula van Pul, one of Slye's psychologists at WSH, to the State, in which Dr. van Pul stated:

I talked to the ward psychologist and Mr. Slye today. Mr. Slye is reported not to be a behavioral problem on the ward and he is working on academic work in an effort to get his high school diploma.

Mr. Slye is reported to be at baseline and as you are aware he does not take any medications nor has he been diagnosed with a mental illness. In speaking to him, it is apparent that he has an intellectual disability and that his verbal comprehension

5

is limited. He has difficulty with concepts that have more than one simple idea. When processing information he requires simple concepts and his thinking is concrete in nature. He does not do well with any questions or concepts that are abstract. He does talk to himself but he stated that he does this to talk out something that he is having difficulty understanding. When he failed to understand something I asked him, he simply did not say anything but when directly asked he admitted that he did not understand the question. I think he is as far as he can go in understanding the issues that brought him here.

CP at 281.

The State argued that it had sufficient information to form a good faith belief that Slye was either currently competent or could be restored to competency. To support its argument, the State included a letter from WSH notifying the State that Slye could qualify for temporary unescorted leave in the community. The letter also informed the State that WSH would provide the State with 10 days' notice of any authorized leave in the community. The letter further stated, "At the point Mr. Slye no longer meets detainment criteria set forth under Chapter 71.05, appropriate notification will be provided pursuant to RCW 71.05.330, RCW 71.05.340, or RCW 71.05.335." CP at 387. The State also included another email from Dr. van Pul, which stated,

Although [Slye's] civil commitment does not expire until March 2019, he does not have a mental health diagnosis and is not on any medication. As a result of not meeting the RCW 71.05 criteria to remain in the hospital, we are needing to move toward discharging him to the community.

CP at 390.

The deputy prosecuting attorney who refiled the charges submitted a declaration outlining the decision to refile the information. In the declaration, the deputy prosecuting attorney referenced an additional conversation she had with Dr. van Pul in which Dr. van Pul claimed Slye was "'wily like a fox'" and expressed concern about Slye being released into the community. CP at 423. The deputy prosecuting attorney stated that she got the impression "that the defendant

understands more than it is believed he understands." CP at 423. She also documented growing concerns the Pierce County Prosecuting Attorney's had with WSH's competency evaluations of individuals with developmental disabilities. The deputy prosecuting attorney stated that after conversations with two other deputy prosecuting attorneys, "[i]t appears to us the evaluators, particularly Dr. Hendrickson, perfunctorily find these individuals incompetent and not restorable, leading to a lack of confidence in the evaluations from WSH." CP at 424. She also referenced an unrelated case in which a WSH competency evaluation was contradicted during a contested competency hearing.

The deputy prosecuting attorney declared that the State refiled and requested a new competency evaluation "*based on the belief that the defendant actually is competent* and an evaluation by an independent evaluator who is not associated with WSH was and is necessary." CP at 424 (emphasis added). The deputy prosecuting attorney also declared,

> That because I had learned from both Ms. van Pul and Ms. Byrne that WSH did not believe that they could continue to have the defendant civilly committed and that as soon as a residence could be found for him he would be released the decision was made with [the unit lead attorney] to refile immediately and open the case with a bench warrant so that the defendant could be transported directly from WSH to the Pierce County Jail.

CP at 423.

After a hearing on the motion to dismiss, the trial court made the following relevant findings of fact,

19. Mr. Slye's WSH records that the State reviewed prior to refiling the information, the correspondence the State had with Paula van Pul and Lindsey Bryne, and the letter sent by WSH did not provide the State with a good faith basis to believe the procedures outlined in chapter 10.77 RCW will lead to the restoration of Mr. Slye's competency to stand trial in this case.

7

20. Consistent with the prior forensic evaluations, all of the information reviewed by the State prior to refiling confirmed that Mr. Slye suffered from an intellectual disability and that his comprehension abilities were limited.

21. Pursuant to the July 9, 2018 order and findings, Mr. Slye's incompetence has been determined by the secretary to be solely the result of a developmental disability which is such that competence is not likely to be regained during an extension of competency restoration treatment.

22. Mr. Slye is not likely to regain competency. Further restoration attempts are unlikely to be successful as Mr. Slye's barrier to competency is cognitive in nature and past psychoeducational restoration efforts have been unsuccessful twice in the past.

CP at 437. The trial court concluded that the State did not have a good faith basis to believe Mr. Slye could be restored to competency at the time of the State refiled the charges. The court also concluded that "[p]ursuant to RCW 10.77.086(3), no further restoration period is available." CP at 438. The trial court dismissed the charges without prejudice and referred Slye back to WSH for evaluation for further civil commitment.

The State appeals the trial court's order dismissing the charges against Slye without prejudice.

ANALYSIS

A. LEGAL PRINCIPLES

Washington law prohibits any incompetent person to be tried, convicted, or sentenced for the commission of an offense. RCW 10.77.050. A person is incompetent if he or she "lacks the capacity to understand the nature of the proceedings against him or her or to assist in his or her own defense as a result of mental disease or defect." RCW 10.77.010(15). Under RCW 10.77.060(1)(a), whenever there is a reason to doubt a defendant's competency, the superior court

shall, "either appoint or request the secretary to designate a qualified expert or professional person, who shall be approved by the prosecuting attorney, to evaluate and report upon the mental condition of the defendant."

If a defendant is determined to be incompetent, the superior court shall commit the defendant for competency restoration treatment for a period of no more than 90 days. RCW 10.77.086(1). If the defendant is not restored to competency, the court may order a second competency restoration treatment period of 90 days, and under certain circumstances, may order a third competency restoration treatment period of 180 days. RCW 10.77.086(3), (4). However, if the defendant's incompetence is the result of developmental disability, "which is such that competence is not reasonably likely to be regained" during an extended competency restoration period, then the court may not order additional competency restoration periods beyond the initial 90 day competency restoration period. RCW 10.77.086(3).

After charges are dismissed, the superior court loses jurisdiction and authority to determine a defendant's competency. *State v. Carneh*, 149 Wn. App. 402, 409-10, 203 P.3d 1073, *review denied*, 166 Wn.2d 1030 (2009). A prosecutor may refile charges against an incompetent individual if the prosecutor has "a good faith basis to believe that the procedures outlined in chapter 10.77 RCW will likely lead to the restoration of a defendant's competency to stand trial." *Id*. at 411.

We review whether the State had a good faith basis to refile charges de novo. *Id*.

B.       GOOD FAITH BASIS FOR REFILING

The State argues that, under *Carneh*,[1] the trial court erred by finding the State lacked a

good faith basis to refile the criminal charges against Slye and dismissing the charges.[2]  The State

contends that the factors identified in *Carneh* demonstrated that the State had a good faith basis to

---

[1]  At oral argument, the State referenced CrR 8.3 for the first time in this appeal.  Wash. Court of Appeals oral argument, *State v. Slye*, No. 53048-1-II (July 2, 2020), at 1 min., 41 sec. to 2 min., 50 sec. (on file with court).  To the extent that the State referenced CrR 8.3 to imply that it was the appropriate standard for dismissal, rather than the standard of good faith articulated in *Carneh*, we decline to consider an argument that was made in passing for the first time in oral argument.  RAP 12.1(a); *State v. Erickson*, 168 Wn.2d 41, 44 n.1, 225 P.3d 948 (2010).

[2]  The State also assigns error to findings of fact 1, 2, 3, 4, 5, 6, 9, 10, 11, 12, 13, 14, 15, 17, 18, 19, 20, 21, and 22.  The State notes that, "[o]n appeal, the State assigns errors to almost all of the findings as incorrect, unsupported in the record, misleading of the facts, or misleading of the law." Br. of Appellant at 12.  However, the State only provides any meaningful argument challenging the findings directly related to its good faith basis to refile the information.  We will not consider issues or assignments of error that are not supported by argument or citation to authority.  RAP 10.3(a)(6); *State v. Mason*, 170 Wn. App. 375, 384, 285 P.3d 154 (2012), *review denied*, 176 Wn.2d 1014 (2013).  "'Such [p]assing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.'"  *Id.* (alteration in original) (internal quotations omitted) (quoting *West v. Thurston County*, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012).  In addition, with regard to the State's challenge to finding of fact 12, the State fails to identify the remedy it seeks with regard to any alleged error in the trial court's finding of fact 12.  Therefore, we decline to review whether substantial evidence supports each individual finding of fact.

Furthermore, we note that the State assigned error to findings of fact that are clear recitations of the factual and procedural history of this case, including, but not limited to, findings of fact 1-11 and 13-18.  In addition to not providing any meaningful argument or citation to authority to support its challenge to these findings of fact, the record shows that these findings are uncontroverted and amply supported by evidence in the record.

To the extent the State has identified incorrect or irrelevant information the trial court relied on, it does not link this information to specific findings of fact and, instead focuses on why that information did not support the trial court's finding regarding good faith.  Because our review is de novo, the trial court's reliance on incorrect or irrelevant information has no effect on our decision.  *See Carneh*, 149 Wn. App. at 411.

refile the information. The State also argues that because it believed that Slye was actually competent, it presented "incontrovertible proof of good faith." Br. of Appellant at 17. We disagree.

In *Carneh*, Carneh was diagnosed as a paranoid schizophrenic. 149 Wn. App. at 406. After Carneh was found to be incompetent, he was committed for restoration treatment, including treatment with antipsychotic medication. *Id*. at 405. Carneh was found to be competent, but later decompensated and was recommitted for restoration treatment again. *Id*. Carneh was found competent again, but decompensated during a delay in trial. *Id*. at 405-06. After this last decompensation, the trial court found that there was reason to believe that Carneh's competency could be restored, but the full benefits of the medication needed to restore his competency would take several months. *Id*. at 406. Therefore, the trial court dismissed the criminal charges without prejudice and Carneh was civilly committed. *Id*.

When the State was notified that Carneh's treatment had progressed to the point that he was going to receive unescorted grounds privileges or community leave, the State refiled the criminal charges and Carneh moved to dismiss the charges. *Carneh*, 149 Wn. App. at 406-07. The court held that the State had two reasons supporting its good faith belief that Carneh could be restored to competence:

> First, before dismissing the case without prejudice, the trial court found "reason to believe that [Carneh's] competency will again be restored. Second, the letter from WSH stated that Carneh would be moved to a ward where he would be able to earn the privilege to move about without accompaniment on the unsecured grounds of WSH or within the community.

*Id.* at 411 (alteration in original) (footnote omitted). Contrary to the State's assertion, none of the reasoning in *Carneh* undermines the trial court's finding that the State lacked a good faith basis to refile the information against Slye.

The State argues that Slye's juvenile competency evaluation stated "it is 'entirely possible that he could at some point in the future be able to sufficiently learn to become competent.'" Br. of Appellant at 14 (quoting 3 Verbatim Report of Proceeding at 6). However, an additional restoration period did not significantly improve Slye's competence and the evaluators from WSH expressed increasing doubt as to whether additional education would improve Slye's understanding and comprehension of legal concepts or his ability to effectively assist his attorney. Unlike in *Carneh*, where the defendant was previously restored to competency on two occasions and competency treatment was based primarily on the stabilizing effect of medication, there was no indication from Slye's prior evaluations or the trial court's prior rulings that the time Slye spent in civil commitment actually restored his competency or would improve the likelihood that Slye would be restored to competency. Here, all prior attempts at competency restoration had failed to restore Slye to competency.

Also, the State relies heavily on the fact that, like in *Carneh*, the State was notified that Slye was going to be released from full confinement. However, in this case, Slye's pending release was not indicative of improvement. In *Carneh*, the defendant was civilly committed based on a diagnosis of paranoid schizophrenia, a condition that would preclude release from full confinement unless it was improved. Here, Slye suffered from a developmental disability, and the notice received by the State made it clear that his release was pending not because of improvement in his condition but because his condition was not a mental illness that was amenable to treatment at

WSH. Therefore, Slye's pending release from WSH did not provide the State with a good faith belief that Slye was actually competent or would be able to be restored to competency under the procedures of chapter 10.77 RCW.

Furthermore, the State's argument that it had a good faith basis to refile the information because it believed that Slye was actually competent lacks merit. The State cites to several cases in which defendants with more severe cognitive limitations than Slye were found to be competent.

Trial courts have wide discretion to determine a defendant's competency, and, as a result, the fact that other defendants have been found competent under similar circumstances is not as relevant as the evaluations and opinions of the experts. *See State v. Ortiz*, 104 Wn.2d 479, 482, 706 P.2d 1069 (1985), *cert. denied*, 476 U.S. 1144 (1986). For example, the State relies heavily on *Ortiz*, a case in which Ortiz did not know the shape of a ball, could not name four presidents, believed Longfellow was Jesus, and thought there was only 1 day in a week. *Id*. However, what the State fails to recognize is that in *Ortiz*, the court noted that the testimony of the expert witness supported the trial court's findings regarding competency. *Id.* at 483. And on appeal, Ortiz challenged only the standard for determining competency, not the trial court's competency determination based on the statutory standard. *Id*. Therefore, there is little, if any reason, to believe that a handful of appellate cases would change the trial court's determination when weighed against multiple, and uncontroverted, expert evaluations opining that Slye was incompetent. There is no reason the State should have believed that, without any significant change in Slye's cognitive ability, the trial court would make a different competency finding.

Moreover, other than the State's own uncredentialed belief that Slye is actually competent, the State provided no expert opinion that conflicted with the opinions of the forensic evaluators.

The deputy prosecuting attorney's declaration shows that there were multiple conversations among deputy prosecuting attorneys regarding evaluations conducted by WSH, but it does not mention scientific or expert opinions that provide a basis for questioning the validity of Slye's evaluations or Slye's competency. Rather, it appears the prosecuting attorney's office was generally unhappy with the results of the WSH evaluations and frustrated with situations, like the one here, in which an incompetent defendant could not be continually detained at WSH under civil commitment but also could not be tried in a criminal court.

At the time of the decision to refile the information, the State primarily relied on Dr. van Pul's characterization of Slye as "'wily'" and that other prosecutors expressed a lack of confidence in evaluations of persons with developmental disabilities by WSH personnel. Br. of Appellant at 15. However, none of this information supports a good faith belief that Slye was actually competent, a conclusion that is contrary to the opinions of all prior evaluators and all prior findings of the trial court. The State emphasized Dr. van Pul's "wily like a fox" comment, but ignored Dr. van Pul's statements that Slye was "at baseline," continued to struggle with understanding abstract ideas, and had gone as far as Slye could go in understanding the issues that brought him to WSH. CP at 281, 423. These comments are consistent with Dr. Sharrette's observations in his prior evaluations of Slye, which lead to his opinions that Slye is not competent to stand trial.

Furthermore, the deputy prosecuting attorney's declaration shows that the purpose of refiling the criminal charges was to prevent Slye from being released into the community. Based on the record, the State believed that Slye was a danger to the community and refiled the criminal charges to keep Slye in custody. Even if the State had a good faith belief that Slye was dangerous to the community, dangerous is not synonymous with competent to stand trial. Therefore, the

14

State's concerns regarding Slye's dangerousness do not create a good faith basis to refile the criminal charges. And the State's clear desire to keep Slye in custody undermines the assertion that the State refiled the criminal charges because of a good faith belief that Slye could be restored to competency.

Here, the record fails to support the State's assertion that it had a good faith basis for refiling the criminal charges against Slye. Therefore, the trial court did not err by dismissing the charges without prejudice. We affirm the trial court's order.[3]

C.      WHETHER FURTHER RESTORATION PERIODS ARE AVAILABLE

The State argues that the trial court erred by concluding that no further restoration period is available. The State asserts that the trial court's conclusion is gratuitous because it was not the subject of Slye's motion to dismiss the information. The State also asserts that the trial court's conclusions of law related to any issue other than the State's lack of good faith in refiling the charges is superfluous. But even if the State is correct that the trial court's conclusion is an incorrect interpretation of the law, because we hold that the trial court properly dismissed the refiled information, a review of this conclusion of law is moot. Accordingly, we decline to review the trial court's conclusion that no further restoration period is available.

---

[3] The State also argues that the trial court erred by finding that Slye would not be restored to competency and the trial court relied on incorrect or irrelevant information in making its finding that the State did not have a good faith basis for refiling the information. However, the State does not explain how these alleged errors affect whether the State had a good faith belief to support refiling the charges. Moreover, because we review de novo whether the State had a good faith belief to support refiling the charges, any flaws in the trial court's reasoning are irrelevant this court's analysis and decision. *See Carneh*, 149 Wn. App. at 411.

No. 53048-1-II

An issue is moot if this court can no longer provide effective relief. *State v. Cruz*, 189 Wn.2d 588, 597, 404 P.3d 70 (2017). Here, the trial court dismissed the State's refiled criminal charges because the State did not have a good faith basis to refile the charges. Therefore, because we hold that the trial court properly dismissed the information based on the State's lack of a good faith basis for refiling the charges, there is no effective relief that we can grant based on reviewing the trial court's conclusion that no further restoration period is available. Accordingly, we decline to address whether the trial court erred by concluding that no further restoration attempts were available.

We affirm the trial court's order dismissing the charges against Slye without prejudice.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, C.J.

We concur:

Glasgow, J.

Cruser, J.